Joseph H. Harrington
Acting United States Attorney
Eastern District of Washington
Tyler H.L. Tornabene
Dan Fruchter
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

In Re The Matter of:

United States' Petition
for Summary Enforcement and Costs
Re: Civil Investigative Demand
No. EDWA 21-004 and EDWA 21-005

CASE NO. 4:21-cv-5067

**DECLARATION OF DANIEL HUGO FRUCHTER IN SUPPORT OF UNITED STATES' PETITION FOR SUMMARY ENFORCEMENT AND COSTS RE: CIVIL INVESTIGATIVE DEMAND Nos. EDWA 21-004 and EDWA 21-005**

**Declaration of Daniel Hugo Fruchter in Support of
the United States' Petition for Summary Enforcement and Costs
Re: Civil Investigative Demand Nos. EDWA 21-004 and EDWA 21-005**

I, Daniel Hugo Fruchter, declare as follows:

1.      I am an Assistant United States Attorney (AUSA) with the United States Attorney's Office for the Eastern District of Washington and counsel for the United States in the above-captioned matter. I have worked as a Department of Justice attorney for over twelve years and during that time have focused almost exclusively on criminal and civil fraud cases including the investigation and prosecution of suspected False Claims Act violations. I submit this declaration in support of the United States'

Petition for Summary Enforcment and Costs Re: Civil Investigative Demand Nos. EDWA 21-004 and EDWA 21-005.

2.    I am familiar with this case as one of the assigned AUSAs to the False Claims Act investigation of Respondents Sunrhys, LLC and Elyssa Young.   The statements herein are based on my personal knowledge.

3.    Attached hereto are true and accurate copies of the following:

- **Exhibit 1:** Civil Investigative Demand No. EDWA 21-004 issued to Sunrhys, LLC;

- **Exhibit 2:** Civil Investigative Demand No. EDWA 21-005 issued to Elyssa Young[1]

- **Exhibit 3:** Transcript of sworn testimony of United States Department of Veterans Affairs (VA) Office of Inspector General Special Agent David Huntoon dated April 21, 2021;

- **Exhibit 4:** Invoice from Central Court Reporting for appearance on April 21, 2021.

**ISSUANCE AND SERVICE OF CID Nos. EDWA 21-004 and EDWA 21-005**

4.    On March 29, 2021, the Acting United States Attorney for the Eastern District of Washington issued CID Nos. EDWA 21-004 and EDWA 21-005 (herein also referred to as "the CIDs") to Respondents Sunrhys, LLC, and Elyssa Young.  The CIDs are attached hereto as Exhibits 1 and 2.  The CIDs were issued in connection with the False Claims Act investigation of Respondents regarding allegations that they knowingly submitted and caused to be submitted false and fraudulent claims for reimbursement of federal VA Support Housing (VASH) housing support payments in their capacity as a landlord participant in the VASH program.

5.    The CIDs were personally served on Respondents on April 14, 2021, by

---

[1] Exhibits 1 and 2 hereto are also Exhibit 1 and Exhibit 2 as referenced in the transcript of Special Agent Huntoon's testimony, attached hereto as Exhibit 3.

Declaration of Daniel Hugo Fruchter in Support of United States' Petition for Summary Enforcement and Costs - 2

Special Agent David Huntoon of the VA OIG. (Exhibit 3, 11:2-14:2).

6.    The CIDs required that Respondents "give oral testimony under oath, commencing seven (7) days from the date of receipt of this Demand, at 9:00 a.m., at the United States Attorney's Office for the Eastern District of Washington, 920 W. Riverside Ave., Spokane, Washington 99201 . . . ." (Exhibits 1 and 2).

7.    Based on the April 14, 2021, day of service, seven days from Respondents' receipt of the CIDs was April 21, 2021.

8.    When Special Agent Huntoon personally served Respondents on April 14, 2021, he explicitly told Respondents that, pursuant to the CIDs, Respondents were both required to appear in Spokane, Washington, as directed by the CID, within 7 days. (*See* Exhibit 3, 11:2-12:7).  Respondent Elyssa Young, an owner, executive officer, and registered governor of Sunrhys, LLC, indicated that she understood her obligation, both individually and on behalf of Sunrhys, LLC. (*Id.* 11:2-11:10).   At no time did Ms. Young express any confusion as to the clear direction explicitly stated in the CIDs regarding the date, time, and location of the required oral testimony. (*Id.* 11:2-14:2).

9.    Special Agent Huntoon further pointed Ms. Young to the contact information of undersigned counsel located on the CIDs, and explicitly informed her that if she had any difficulty appearing as directed, or wished to reschedule the testimony, that she should contact undersigned counsel at the United States Attorney's Office and that undersigned counsel would work with her and with Sunrhys, LLC in that regard. (*Id.* 11:2-11:10, 12:2-12:17).

10.    At no time did Respondent Elyssa Young or Respondent Sunrhys, LLC, request rescheduling the CID testimony, indicate that either respondent was unavailable on April 21, 2021, express any confusion or uncertainty regarding the obligation of both Respondents to appear on April 21, 2021, or contact the United States regarding the compelled CID testimony of either respondent. (*Id.* 11:2-14:2).

11.    As a result of Respondents' failure to appear as directed by the CIDs to provide oral testimony under oath, and Responents' lack of any notice that they would

1   not appear as directed, the United States incurred a total of $240.35 in costs from

2   Central Court Reporting.  (Exhibit 4).  This does not include any costs associated with

3   counsel for the United States or their support staff in appearing on April 21, 2021, or

4   in preparing this petition or supporting materials.

5        12.   At the time of this filing, neither Respondent Elyssa Young nor

6   Respondent Sunrhys, LLC have contacted undersigned counsel or the United States

7   regarding their failure to appear as directed.

8              **GROUNDS FOR ENFORCING CID No. EDWA 21-002**

9        13.   Respondent Elyssa Young and Respondent Sunrhys, LLC did not, and

10  have not, moved or requested to modify, quash, or set aside the CIDs, nor lodged any

11  objection thereto.

12       14.   The United States' investigation concerns allegations that Respondents

13  submitted and/or caused to be submitted false claims for VASH housing support

14  payments in violation of material program requirements, including the critical

15  requirement that Respondents not receive any payments or other consideration from

16  the tenant in addition to, or in excess of, the agreed-upon rental payment amount.

17       15.   More specifically, the investigation concerns allegations that Respondents

18  falsely and fraudulently claimed and received over $7,500 in federally-funded housing

19  support payments, in part by improperly overcharging Respondents' tenant by over

20  $1,000 during the course of the lease agreement between Respondents and the tenant

21  and by falsely certifying compliance with program requirements.

22       16.   The CIDs call for Respondents Sunrhys LLC and Elyssa Young to provide

23  oral testimony under oath on four enumerated topics, all of which are relevant and

24  material to the investigation of the alleged False Claims Act violations committed by

25  Respondents: (1) claims for reimbursement of federal VASH funding; (2)

26  communications with tenants, government entities and employees, and any other

27  persons or entities concerning VASH funding or the subject property; (3)

28  Respondents' understanding of, and efforts to comply with, applicable program

Declaration of Daniel Hugo Fruchter in Support of United States' Petition for
Summary Enforcement and Costs - 4

1  requirements and relevant contractual obligations; and (4) rent payments made by the

2  tenants with regard to the subject property.  The CIDs also call for the production of

3  documentary material and responses to certain interrogatories concerning those same

4  topics.  Exhibits 1 and 2.

5      17.    These areas of inquiry and requests are highly relevant and material to any

6  determination of whether or not Respondents violated the False Claims Act by falsely

7  and/or fraudulently claiming VASH funding in violation of program requirements and

8  legal obligations.

9      18.    The United States' investigation is ongoing and the United States has not

10 made any determination regarding Respondents' potential False Claims Act liability or

11 commenced any civil action in connection with this investigation, which remains

12 ongoing.

13     19.    The information sought by the CIDs and the four identified oral testimony

14 topics are directly relevant and material to these allegations and to the United States'

15 investigation and consideration of Respondents' potential False Claims Act liability.

16                **GROUNDS FOR IMPOSING COSTS**

17     20.    I am aware of no time prior to, or even on April 21, 2021, in which

18 Respondents made any request to the United States Attorney's Office for the Eastern

19 District of Washington, the assigned case agent with VA OIG, or anyone for the

20 government associated with this investigation, for an alternate date, time, or location

21 in which to provide oral testimony under oath pursuant to the CID.  To the contrary,

22 when served with the CIDs, Ms. Young indicated that she understood her individual

23 obligation, and Sunrhys LLC's obligation, to provide oral testimony on the date and

24 time, and at the location, directed, and further indicated that she understood whom she

25 was to contact with any questions or concerns regarding the date, time, or location, or

26 otherwise.  (Exhibit 3, 11:2-11:10).

27     21.    At no time that I am aware of did either Respondent make any objection

28 to the United States Attorney's Office for the Eastern District of Washington, the

1  assigned case agent with VA OIG, or anyone for the government associated with this

2  investigation, regarding the enforceability of either CID.

3      22.    At no time that I am aware of did either Respondent inform the United

4  States Attorney's Office for the Eastern District of Washington, the assigned case agent

5  with VA OIG, or anyone for the government associated with this investigation, that

6  they would not be appearing to provide oral testimony under oath on April 21, 2021,

7  as required by the CID.

8      I declare under penalty of perjury that the foregoing is true and correct.

9

10     Executed this 23rd day of April, 2021, at Spokane, Washington.

11

12

13                                   Dan Fruchter
                                     Assistant U.S. Attorney
14                                   Eastern District of Washington

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **EXHIBIT 1**

**Civil Investigative Demand-Oral Testimony/Interrogatory Responses/Document Requests**

# United States Attorney's Office for the Eastern District of Washington
**Spokane, WA 99201**

TO:  Sunrhys, LLC                                   Civil Investigative Demand EDWA 21-004
2522 N. Proctor St. #524
Tacoma, Washington 98406


This Civil Investigative Demand is issued pursuant to the False Claims Act, 31 U.S.C. §§ 3729-3733, in the course of a False Claims Act investigation to determine whether there is or has been a violation of 31 U.S.C. § 3729. The False Claims Act investigation concerns allegations that Sunrhys, LLC (you or Sunrhys) have violated the False Claims Act, 31 U.S.C. § 3729, by knowingly submitting and causing to be submitted false claims, and making and using false statements material to the payment of false claims.  Specifically, the investigation concerns allegations that between January 2019 and the present (hereinafter the "relevant time period"), you knowingly overcharged your tenant in excess of the allowable and agreed-upon amount, and falsely and fraudulently sought and obtained reimbursement of federal U.S. Department of Housing and Urban Development-Veterans Affairs Support Housing (HUD-VASH) funding in violation of program requirements for your property located at 3712 Mill Creek Road, Walla Walla, Washington 99362 (The Mill Creek Road Property).

This Demand requires you to provide oral testimony, documents, and answers to interrogatories to the Federal Government. This is the original of the Demand; no copies have been served on other parties.  The information and documents provided in response to this Demand may be shared, used, and disclosed as provided by 31 U.S.C. § 3733.

## A.  Documentary Material

You are required by this Demand to produce any and all documents in your possession, custody or control responsive to the requests stated in Attachment A hereto.

You must make this material available to Assistant United States Attorneys Dan Fruchter, and Tyler Tornabene, who have been designated as False Claims Act custodians in this case.

Unless otherwise stated, the relevant time period is from January 2019, to the present.  The

1

terms "document" and "documents" as used in this Civil Investigative Demand and any attachment(s) are used in the broadest sense permitted by the Federal Rules of Civil Procedure 26 and 34 and include, but are not limited to, any written or electronically stored information. The term "communication" should be interpreted by you in the broadest possible sense and means the transmittal or exchange of information by any means, whether by chance or design, and includes, but is not limited to, telephone conversations, conversations in meetings, letters, memoranda, notes, telegraphic and telex communications, by face-to-face encounter, by regular mail or courier, by telephone, or by other means of electronic communication, whether transmitted in interstate or intrastate commerce.

The General Instructions provided in Attachment A to this Civil Investigative Demand shall govern your production of documents responsive to this Civil Investigative Demand. The Specifications for Production of ESI and Digitized ("Scanned") Images (Attachment B) shall further govern your production of all materials, including hard copies of documents and electronically stored (ESI) materials and digitized images, responsive to this Civil Investigative Demand.

These documents shall be produced no later than thirty (30) days from the receipt of this Demand, at the United States Attorney's Office for the Eastern District of Washington, 920 W. Riverside Ave., Room 340, Spokane, Washington 99201. Mr. Fruchter and Mr. Tornabene can be reached at (509) 353-2767. The production of documentary material in response to this Demand must be made under a sworn certificate in the form printed in this Demand.

## B.   Interrogatory Responses

Unless otherwise stated, the relevant time period is from January 1, 2019, to the present. You are required by this Demand to answer the interrogatories stated in Attachment A hereto. The answers to the interrogatories must be submitted no later than thirty (30) days from the receipt of this Demand, to the United States Attorney's Office for the Eastern District of Washington, 920 W. Riverside Ave., Spokane, Washington 99201, or at such time and in such other place or manner as may be agreed upon by Assistant United States Attorneys Dan Fruchter, Tyler Tornabene, and you. The interrogatories shall be answered under oath and verified by you. If you object to any interrogatory, the reasons for the objection shall be stated with specificity. The instructions set forth in Attachment A will govern your answers.

## C.  Oral Testimony

You are further required by this Demand to give oral testimony under oath, commencing seven (7) days from the date of receipt of this Demand, at 9:00 a.m., at the United States Attorney's

Office for the Eastern District of Washington, 920 W. Riverside Ave., Spokane, Washington 99201, or at such time and in such other place as may be agreed upon by Mr. Fruchter and/or Mr. Tornabene and you. The testimony will be taken stenographically and also may be recorded audio-visually.

AUSAs Dan Fruchter and Tyler Tornabene are False Claims Act investigators who may conduct the examination, and the custodians to whom the transcript of the deposition will be delivered. Your attendance and testimony at the oral examination are necessary to the conduct of the False Claims Act investigation described above. You have the right to be accompanied by an attorney and any other personal representative at the oral examination.

The general purposes for which this Civil Investigative Demand is issued are to discover your knowledge, between January 1, 2019 and the present, about claims for reimbursement of HUD-VASH funding made by you with respect to the Mill Creek Road Property.

Specifically, you must designate a responsible and knowledgeable individual to provide testimony on your behalf on the primary areas of inquiry identified below:

1.      Your claims for reimbursement of HUD-VASH funding with respect to the Mill Creek Road Property.

2.      Your communications with tenants, government entities and employees, and other persons or entities concerning the Mill Creek Road Property.

3.      Your understanding of, efforts to comply with, program requirements, regulations, and the terms of the Housing Assistance Payments (HAP) contract and lease with respect to the Mill Creek Road Property.

4.      Rent payments to you by or on behalf of any tenants with respect to the Mill Creek Road Property.

Issued at Spokane, WA, this 29ᵗʰ day of March, 2021.

Joseph H. Harrington
Acting United States Attorney for the
Eastern District of Washington

3

# Attachment  A

INSTRUCTIONS FOR CIVIL INVESTIGATIVE DEMAND NO. EDWA 21-004

## A. DEFINITIONS USED IN THIS CIVIL INVESTIGATIVE DEMAND

The following definitions (both in the singular and in the plural) shall apply:

1. The terms "you," "your," or "Sunrhys" shall refer to Sunrhys, LLC, along with any and all of your predecessors in interest, successors in interest, parents, subsidiaries, related entities or organizations, brother or sister entities, affiliates, facilities, properties, owners, governors, employees, officers, agents, board members, or subsidiaries.

2. The term "documents" shall have the same meaning as set forth in Federal Rule of Civil Procedure 34(a)(l)(A) and shall mean and refer to paper documents and electronically stored information, as that term is defined in the 2006 Advisory Committee Note to Rule 34(a) ("Rule 34(a)(l) is expansive and includes any type of information that is stored electronically"). Paper documents shall include, but not be limited to, correspondence, emails, communications, reports, studies, memoranda, directives, policies, agendas, minutes, resolutions, worksheets, graphs, charts, addenda and attachments, written, graphic, and photographic matter, sound recordings, however produced or reproduced, of every kind and description, including, but not limited to, all copies and drafts thereof that have annotation, notes, modifications or other alterations.

3. "Communication" shall mean the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), and any documents concerning communications.

4. "Concerning" or "concerns" shall mean relating to, referring to, describing, evidencing, or constituting.

5

## B. INSTRUCTIONS

1. Production of Electronically Stored Information. The United States Attorney for the Eastern District of Washington hereby requests that you produce documents that are maintained as electronically stored information in a logically unitized format. Logical unitization of documents requires you to ensure, among other things, that a particular document captures all of its respective pages and that document relationships, such as a "parent" document (*e.g.*, a fax cover sheet) and "children" attachments (*e.g.*, a faxed letter and attachment to the letter), are preserved. The United States Attorney for the Eastern District of Washington hereby incorporates by reference into these instructions and the Civil Investigative Demand, Attachment B, "Specifications for Production of ESI and Digitized ("Scanned") Images ("Production Specification")" requests that documents be produced in accordance with those specifications or in native format, except as specifically agreed to between you and the identified False Claims Act custodian.

2. Privilege Log. If you assert a privilege regarding the production of any document, with respect to each document to which the privilege is asserted, state the following:

   (a) the privilege claimed;

   (b) precise statement of the facts upon which the claim of privilege is based; and

   (c) the following information as to each purportedly privileged document:

   (i) the nature of the document, *e.g.*, letter, memorandum, photograph, tape, electronic copy, etc.;

   (ii) the date on which it was prepared;

   (iii) the identity of the person by whom it was prepared;

6

(iv) the identity of each person to whom it was delivered or sent; and

(v) the identity of the person or entity that presently has custody or control of such document.

In addition, any attachment to an allegedly privileged document should be identified on the Privilege Log separately from the document to which it is attached. Moreover, an e-mail containing a string of related e-mails (replies or forwarding the original text) should not be identified on the Privilege Log as a single document. Instead, each e-mail in the string should be identified on the Privilege Log separately with a notation indicating the previous e-mails it contains.

3. Unless specifically stated so within, these requests require production of the entire document.

4. Materials required by the Civil Investigative Demand should be accompanied by an index identifying each document or other materials and the item or items of the Civil Investigative Demand to which it refers.

## DOCUMENT REQUESTS

1. Documents concerning any claims for reimbursement made or submitted by you of HUD-VASH funding or other federal funding with respect to the Mill Creek Road Property.

2. Documents concerning any communications, whether external or internal, concerning the Mill Creek Road Property, including, but not limited to, any communications with or concerning any tenant, rent payment, federal, state, or local government entity, claim for reimbursement, or agreement concerning the Mill Creek Road Property.

3. Documents concerning any agreement with any tenant or with any federal, state, or local government entity concerning the Mill Creek Road Property.

4. Documents concerning your understanding of, efforts to comply with, program

7

requirements, regulations, and the terms of the Housing Assistance Payments (HAP) contract and lease with respect to the Mill Creek Road Property.

5.      Documents concerning any rent payments to you by or on behalf of any tenants with respect to the Mill Creek Road Property.

## INTERROGATORIES

1.      List each claim for reimbursement of federal, state, or local governments funds made by you with respect to the Mill Creek Road Property, including:

   a.   The date any such claim was made or submitted;

   b.   The date of payment of any such claim;

   c.   The means by which payment was made;

   d.   The amount claimed by you;

   e.   The amount paid;

   f.   The agreement under which any such claim was submitted;

   g.   The time period covered by or pertaining to any such claim.

2.      List each rent payment made to you with respect to the Mill Creek Road Property, including:

   a.   The date of payment;

   b.   The means by which payment was made;

   c.   The amount paid;

   d.   The agreement under which any such claim was submitted;

8

e.  The time period covered by or pertaining to any such claim.

9

# Attachment B

**Specifications for Production of ESI and Digitized ("Scanned") Images
("Production Specifications")**

### Collection of Electronically Stored Information (ESI)

Careful consideration should be given to the methodology, implementation and documentation of ESI collection to ensure that all responsive data and metadata are preserved in the collection process. Consideration should also be given as to whether production media should be encrypted when producing to the government when required by law (i.e. Health Insurance Portability and Accountability Act (HIPAA), Family Educational Rights and Privacy Act (FERPA), etc. *See* Section 22 below.

### 1.    Specification Modifications

Any modifications or deviations from the Production Specifications may be done only with the express permission of the government and these modifications or deviations should be communicated to the government and approved by the government in written form. Any responsive data or documents that exist in locations or native forms not discussed in these Production Specifications remain responsive and, therefore, arrangements should be made with the government to facilitate their production.

### 2.    Production Format of ESI and Imaged Hard Copy Documents

Responsive ESI and imaged hard copy shall be produced in the format outlined below. All ESI, except as outlined below in sections 5 – 19, shall be rendered to TIFF image format, and accompanied by an Opticon/Concordance® Image Cross Reference file. All applicable metadata/database (see section 3 below) shall be extracted and provided in Concordance® load file format.

    a. **Image File Format:** All documents shall be produced in black and white TIFF format unless the image requires color. An image requires color when color in the document adds emphasis to information in the document or is itself information that would not be readily apparent on the face of a black and white image.

    b. When producing black and white paper documents scanned to images, or rendered ESI, they shall be produced as 300 dpi, 1 bit, single-page TIFF files, CCITT Group IV (2D Compression). When producing in *color,* paper documents scanned to images, or rendered ESI, they shall be produced as 300 dpi single-page JPG. Images should be uniquely and sequentially Bates numbered and unless otherwise specified, Bates numbers should be an endorsement on each image.

        i. All TIFF file names shall include the unique Bates number burned into the image. (See section 20, below, regarding Bates number instructions.)

        ii. All TIFF image files shall be stored with the ".tif" extension.

        iii. Images shall be OCR'd using standard COTS products.

            1. An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow for OCR text conversion of certain images. The report shall

**Specifications for Production of ESI and Digitized ("Scanned") Images
("Production Specifications")**

include the DOCID or Bates number(s) corresponding to each such image.

    a. All pages of a document or all pages of a collection of documents that comprise a folder or other logical grouping, including a box, shall be delivered on a single piece of media.

    b. No image folder shall contain more than 2,000 images.

c. **Opticon/Concordance® Image Cross Reference file:** Images should be accompanied by an Opticon load file that associates each Bates number with its corresponding single-page TIFF image file. The Cross Reference file should also contain the relative image file path for each Bates numbered page. The Opticon/Concordance® Image Cross Reference file is a page level load file, with each line representing one image.

Below is a sample:

REL000000001,,.\IMAGES\001\REL000000001.TIF,Y,,,
REL000000002,,.\IMAGES\001\REL000000002.TIF,,,,
REL000000003,,.\IMAGES\001\REL000000003.TIF,,,,
REL000000004,,.\IMAGES\001\REL000000004.TIF,Y,,,
REL000000005,,.\IMAGES\001\REL000000005.TIF,,,,

The fields are, from left to right:

- Field One – (REL000000001) – the Bates Number. This value must be unique for each row in the OPT file. The first page of each document must match the DOCID or BEGDOC# value of the respective document.
- Field Two – (blank) – the volume identifier. This field is not required.
- Field Three – (.\IMAGES\001\REL000000001.TIF) – The relative file path to the image to be loaded.
- Field Four – (Y) – the document marker. A "Y" indicates the start of a unique document.
- Field Five – (blank) – The folder indicator. This field is not required, and typically is not used.
- Field Six – (blank) – The box indicator. This field is not required, and typically is not used.
- Field Seven – (blank) – The page count. This field is not required.

d. **Concordance® Load File:** Images should also be accompanied by a flat, document-level load file to provide the metadata and native files containing delimited text that will populate fields in a searchable, flat database environment. The file encoding must be one of four types: Western European (Windows), Unicode (UTF16), Big-Endian Unicode or UTF8. The file should contain the required fields listed below in section 3.

*June 2019*

**Specifications for Production of ESI and Digitized ("Scanned") Images
("Production Specifications")**

1. Text delimited load files are defined using the standard Concordance delimiters. For example:

   | | |
   |---|---|
   | *Field Separator* | *¶ or Code 020* |
   | *Text Qualifier* | *þ or Code 254* |
   | *Newline* | *® or Code 174* |
   | *Multi-value* | *° or Code 167* |
   | *Nested values* | *\ or Code 092* |

2. This load file should contain the relative file path to the individual multi-page, document level text files.
3. This load file should also contain the relative file path to all provided native files, such as Microsoft Excel or PowerPoint files.
4. There should be one line for every record in a collection.
5. The load file must contain a header listing the metadata/database fields contained within. For example, if the data file consists of a First Page of a Record (BegDoc#), Last Page of a Record (ending Bates / ENDDOC#), DOCID, DOCDate, File Name, and a Title, then the structure may appear as follows:

   þBEGDOCþ¶þENDDOCþ¶þDOCIDþ¶þDOCDATEþ¶þFILENAMEþ¶þTITLEþ

d. **The extracted/OCR text** should be provided for each document as a separate single text file. The file name should match the BEGDOC# or DOCID for that specific record and be accompanied by the .txt extension.

e. **Directory and folder structure:** The directory structure for productions should be:
   \\*CaseName*\\**LoadFiles**
   \\*CaseName*\\**Images** < For supporting images (can include subfolders as needed, should not include more than 2,000 files per folder)
   \\*CaseName*\\**Natives** <Native Files location (can include subfolders as needed, should not include more than 2,000 files per folder)
   \\*CaseName*\\**Text** <Extracted Text files location (can include subfolders as needed, should not include more than 2,000 files per folder)

*June 2019*

## Specifications for Production of ESI and Digitized ("Scanned") Images ("Production Specifications")

### 3. Required Metadata/Database Fields

A "✓" denotes that the indicated field should be present in the load file produced. "Other ESI" includes data discussed in sections 5 – 19 below, but does not include email, email repositories (section 11), "stand alone" items (section 12), and imaged hard copy material (section 9). Email, email repositories, and "stand alone" materials (section 12) should comply with "Email" column below. Imaged hard copy materials should comply with the "Hard Copy" column. The parties will meet and confer about any field which cannot be populated automatically (i.e. would require manual population of information).

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| COLLECTION SOURCE | Name of the Company/Organization data was collected from | Text | 160 | ✓ | ✓ | ✓ |
| SOURCE ID (BOX #) | Submission/volume/box number | Text | 10 | ✓ | ✓ | ✓ |
| CUSTODIAN | Custodian/Source - format: Last, First or ABC Dept. | Text | 160 | ✓ | ✓ | ✓ |
| DUPECUSTODIAN | Custodian/Source – all custodians who had the document before de-duplication; format: Last, First or ABC Dept. | Text | Unlimited | | ✓ | ✓ |
| DUPECUSTODIAN FILE PATH | Listing of all the file locations of the document before de-duplication | Text | Unlimited | | ✓ | ✓ |
| AUTHOR | Creator of the document | Text | 500 | | | ✓ |
| BEGDOC# | Start Bates (including prefix) - No spaces | Text | 60 | ✓ | ✓ | ✓ |
| ENDDOC# | End Bates (including prefix) - No spaces | Text | 60 | ✓ | ✓ | ✓ |
| DOCID | Unique document Bates # or populate with the same value as Start Bates (DOCID = BEGDOC#) | Text | 60 | ✓ | ✓ | ✓ |
| PGCOUNT | Page Count | Number | 10 | ✓ | ✓ | ✓ |
| GROUPID | Contains the Group Identifier for the family, in order to group files with their attachments | Text | 60 | | ✓ | ✓ |

4

*June 2019*

**Specifications for Production of ESI and Digitized ("Scanned") Images**
**("Production Specifications")**

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| PARENTID | Contains the Document Identifier of an attachment's parent | Text | 60 | | ✓ | ✓ |
| ATTACHIDS | Child document list; Child DOCID or Child Start Bates | Text – semicolon delimited | Unlimited | ✓ | ✓ | ✓ |
| ATTACHLIST | List of Attachment filenames | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| BEGATTACH | Start Bates number of parent | Text | 60 | ✓ | ✓ | ✓ |
| ENDATTACH | End Bates number of last attachment | Text | 60 | ✓ | ✓ | ✓ |
| PROPERTIES | Privilege notations, Redacted, Document Withheld Based On Privilege | Text – semicolon delimited | Unlimited | ✓ | ✓ | ✓ |
| RECORD TYPE | Use the following choices: Image, Loose E-mail, E-mail, E-Doc, Attachment, Hard Copy or Other. If using Other, please specify what type after Other | Text | 60 | ✓ | ✓ | ✓ |
| FROM | Sender (i.e. : e-mail address, Last name, First name) | Text | 160 | | ✓ | ✓ |
| TO | Recipient (i.e. : e-mail address, Last name, First name) | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| CC | Carbon Copy Recipients (i.e.: e-mail address, Last name, First name) | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| BCC | Blind Carbon Copy Recipients (i.e. : e-mail address, Last name, First name) | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| SUBJECT | Subject line of email | Text | Unlimited | | ✓ | |
| TITLE | Document Title | Text | Unlimited | | | ✓ |
| CONVINDEX | E-mail system ID used to track replies, forwards, etc. | Text | Unlimited | | ✓ | |

5

*June 2019*

## Specifications for Production of ESI and Digitized ("Scanned") Images
### ("Production Specifications")

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| DOCDATE | Last Modified Date for files and Sent date for e-mail, this field inherits the date for attachments from their parent. Do not provide 00/00/0000. | Date | MM/DD/YYYY | | ✓ | ✓ |
| TEXT FILEPATH | Relative file path of the text file associated with either the extracted text or the OCR | Text | Unlimited | ✓ | ✓ | ✓ |
| DATE TIME SENT | Date and time Sent (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | |
| DATE TIME CRTD | Date Created (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME SVD | Date Saved (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |

*June 2019*

**Specifications for Production of ESI and Digitized ("Scanned") Images
("Production Specifications")**

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| DATE TIME MOD | Date Last Modified (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/ YYYY HH:MM:S S | | ✓ | ✓ |
| DATE TIME RCVD | Date Received (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/ YYYY HH:MM:S S | | ✓ | |
| DATE TIME ACCD | Date Accessed (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/ YYYY HH:MM:S S | | ✓ | ✓ |
| TIME ZONE OFFSET | Time zone of collection locality, relative to Coordinated Universal Time (UTC). E.g., for US Central Standard Time (CST), the value for this field should be -6.0 | Decimal | 10 | | ✓ | |
| FILE SIZE | Native File Size in KBs | Decimal | 10 | | | ✓ |
| FILE NAME | File name - name of file as it appeared in its original location | Text | Unlimited | | | ✓ |
| APPLICATION | Application used to create native file (e.g. Excel, Outlook, Word) | Text | 160 | | ✓ | ✓ |

*June 2019*

## Specifications for Production of ESI and Digitized ("Scanned") Images ("Production Specifications")

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| FILE EXTENSION | Extension for the file (e.g. .doc, .pdf, .wpd) | Text | 10 | | ✓ | ✓ |
| FILEPATH | Data's original source full folder path | Text | Unlimited | | ✓ | ✓ |
| NATIVE LINK | Relative file path location to the native file | Text | Unlimited | | ✓ | ✓ |
| FOLDER ID | Complete E-mail folder path (e.g. Inbox\Active) or Hard Copy container information (e.g. folder or binder name) | Text | Unlimited | ✓ | ✓ | |
| HASH VALUE | Identifying value of an electronic record that is used for deduplication during processing. MD5 or SHA1 hash algorithms may be used, but must be kept consistent throughout all productions and communicated to Government. | Text | Unlimited | | ✓ | ✓ |
| MESSAGEHEADER | E-mail header. Can contain IP address | Text | Unlimited | | ✓ | |
| ATTACHMCOUNT | Number of attachments (any level child document) associated with a ParentID | Text | 10 | | ✓ | |
| FILE TYPE | Description that represents the file type to the Windows Operating System. E.g., Adobe Portable Document Format, Microsoft Word 97 – 2003, or Microsoft Office Word Open XML Format. | Text | 160 | | ✓ | ✓ |
| HAS HIDDEN CONTENT | Identifies whether the document has comments, track changes or other hidden content associated with it | Text | Yes/No | | ✓ | ✓ |

8

*June 2019*

**Specifications for Production of ESI and Digitized ("Scanned") Images**
**("Production Specifications")**

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| MESSAGE TYPE | Exchange Message class or equivalent | Text | 60 | | ✓ | |
| EXTENDED PROPERTIES | For PDFs Only | Text | Unlimited | | ✓ | ✓ |
| HAS REDACTIONS | Identifies whether a record has been produced with redactions; should be populated with Y for records with redactions and N for records without redactions. | Text | Yes/No | ✓ | ✓ | ✓ |

**4.    Search, De-Duplication, Near-Duplicate Identification, Technology Assisted Review, E-mail Conversation Threading and Other Culling Procedures**

a.  De-duplication of exact hash copies shall be performed globally – across all custodians. The custodian of each record shall be populated in the DupeCustodian field.

b.  All files found on the National Institute of Standards and Technology (NIST) list, commonly referred to as deNISTing, should be excluded from delivery to the Government. All available metadata from files withheld from delivery due to the deNISTing process will be available upon request.

c.  All files should be globally de-duplicated with the following conditions:

   i.  The "DupeCustodian" metadata field (listing of all custodians who had the document before de-duplication) must be provided with the document production.

   ii.  The "DupeCustodian File Path" metadata field (listing all the file locations of the document before de-duplication) must be provided with the document production.

   iii.  All files and metadata for the duplicate documents removed during de-duplication must be preserved and available for production upon request.

   iv.  No customization of hashing may occur without prior express approval by the Government.

   v.  De-duplication must be done by document family, not by individual document.

   vi.  A detailed description of the steps taken to de-duplicate (including the process of obtaining hash values) must be provided to the Government. For every production after the first, a separate Unified Custodian overlay shall be provided. If no overlay is necessary due to the fact that no documents de-duped out in connection with previously produced documents, this shall be

**Specifications for Production of ESI and Digitized ("Scanned") Images**
**("Production Specifications")**

expressly stated in the cover letter accompanying the subsequent production(s).

d.  The recipient shall not use any other procedure to cull, filter, group, separate or de-duplicate, or near-deduplicate, etc. (i.e., reduce the volume of) responsive material before discussing with and obtaining the written approval of the government. All objective coding (e.g., near duplicate ID or e-mail thread ID) shall be discussed and produced to the government as additional metadata fields. The recipient will not employ analytic software or technology to search, identify, or review potentially responsive material, including but not limited to, technology assisted review or predictive coding, without first discussing with the government.

### 5.    Hidden Text

All hidden text (e.g. track changes, hidden columns, mark-ups, notes) shall be expanded and rendered in the image file. For files that cannot be expanded the native files shall be produced with the image file.

### 6.    Embedded Files

All non-graphic embedded objects (Word documents, Excel spreadsheets, .wav files, etc.) that are found within a file shall be extracted and produced. For purposes of production, the embedded files shall be treated as attachments to the original file, with the parent/child relationship preserved.

### 7.    Image-Only Files

All image-only files (non-searchable .pdfs, multi-page TIFFs, Snipping Tool and other screenshots, etc., as well as all other images that contain text) shall be produced with OCR text and metadata/database fields identified in section 3 for "Other ESI."

### 8.    Encrypted Files

Any data (whether individual files or digital containers) that is protected by a password, encryption key, digital rights management, or other encryption scheme, shall be decrypted prior to processing for production.

a.  The unencrypted text shall be extracted and provided per section 2.d. The unencrypted files shall be used to render images and provided per sections 2.a and 2.b. The unencrypted native file shall be produced pursuant to sections 10-19.

b.  If such protected data is encountered but unable to be processed, each file or container shall be reported as an exception in the accompanying Exception Report (pursuant to section 25) and shall include all available metadata associated with the data, including custodian information.

*June 2019*

**Specifications for Production of ESI and Digitized ("Scanned") Images**
**("Production Specifications")**

### 9.    Production of Imaged Hard Copy Records

All imaged hard copy material shall reflect accurate document unitization including all attachments and container information (to be reflected in the PARENTID, ATTACHID, BEGATTACH, ENDATTACH and FOLDERID).

   a.  Unitization in this context refers to identifying and marking the boundaries of documents within the collection, where a document is defined as the smallest physical fastened unit within a bundle. (e.g., staples, paperclips, rubber bands, folders, or tabs in a binder).
   b.  The first document in the collection represents the parent document and all other documents will represent the children.
   c.  All imaged hard copy documents shall be produced as 300 dpi single-page TIFF files, CCITT Group IV (2D Compression). All documents shall be produced in black and white TIFF format unless the image requires color. An image requires color when color in the document adds emphasis to information in the document or is itself information that would not be readily apparent on the face of a black and white image. Images identified as requiring color shall be produced as color 300 dpi single-page JPEG files.
   d.  All objective coding (e.g., document date or document author) should be discussed and could be produced to the government as additional metadata/database fields should they be deemed as necessary.

### 10.    Production of Spreadsheets and Presentation Files

All spreadsheet and presentation files (e.g. Excel, PowerPoint) shall be produced in the unprocessed "as kept in the ordinary course of business" state (i.e., in native format), with an associated placeholder image and endorsed with a unique Bates number. *See* section 20 below. The file produced should maintain the integrity of all source, custodian, application, embedded and related file system metadata.

### 11.    Production of E-mail Repositories

E-mail repositories, also known as e-mail databases (e.g., Outlook PST, Lotus NSF), can contain a variety of items, including: messages, calendars, contacts, tasks, etc. E-mail database systems should not be produced without consultation with and written consent of the government about the format for the production of such databases.

### 12.    Production of Items Originally Generated in E-mail Repositories but Found and Collected Outside of E-mail Repositories, i.e., "Stand-alone" Items

Any parent e-mail or other parent items (e.g., calendar, contacts, tasks, notes, etc.) found and collected outside of e-mail repositories (e.g., items having extensions .msg, .htm, .mht, etc.), shall be produced with the "Loose E-mail" metadata fields outlined in section 3, including but not limited to any attachments, maintaining the family (parent/child) relationship.

*June 2019*

### Specifications for Production of ESI and Digitized ("Scanned") Images
### ("Production Specifications")

### 13.    Production of Instant Messenger (IM), Voicemail Data, Audio Data, Video Data, Text Messages, etc.

The responding party shall identify, collect, and produce any and all data which is responsive to the requests which may be stored in audio or video recordings, cell phone/PDA/Blackberry/smart phone data, tablet data, voicemail messaging data, instant messaging, text messaging, conference call data, video/audio conferencing (e.g., GoTo Meeting, WebEx), and related/similar technologies. However, such data, logs, metadata or other files related thereto, as well as other less common but similar data types, shall be produced after consultation with and written consent of the government about the format for the production of such data.

The expectation of the government is that all familial relationships for all data will be maintained. Similiarly to email conversations and families, the expectation is that all messages/texts in a conversation will be provided the same conversation index and groupid data (maintaining the familial relationship) allowing the government to read the entire conversation in context. Messages should be produced to align with the formats listed in section 2 and as individual Unicode text files, and attachments should be produced as native files with images and OCR text.

### 14.    Production of Social Media

Prior to any production of responsive data from social media (e.g., Twitter, Facebook, Google+, LinkedIn, etc.), the producing party shall first discuss with the government the potential export formats before collecting the information, to ensure it is collected and produced in a way that preserves the original metadata, has a clear chain of custody, and provides as much information as possible regarding the source and history of each individual communication.

Social media platforms offer different functions, forms of content, and capability for downloading accounts. Because of these differences, prior to collection of social media data, the producing party must discuss with the government the available export and production methods and formats that the producing party is considering. Unless the government agrees to an alternative in writing, regardless of the social media platform, productions of social media content must meet the following general requirements: (1) separate (2) searchable (3) static images of (4) each responsive posting on the social media platform, (5) all related content (e.g., comments, likes, share or re-transmittal information, images, videos, linked documents and content), and (6) associated metadata (e.g., user name(s), date, and time of all posts, comments, likes, share or re-transmittals).

These general requirements are in addition to any more specific requirements in a particular request (e.g., geolocation data), and the producing party must ask the government about any perceived conflict between these requirements and another source of specifications or requirements. If available from the social media platform or through social media data processing software, files that facilitate interactive review of the data

*June 2019*

**Specifications for Production of ESI and Digitized ("Scanned") Images ("Production Specifications")**

(i.e., html files) as well as load files in .csv format must be produced with the associated content.

### 15.    Production of Structured Data

Prior to any production of responsive data from a structured database (e.g., Oracle, SAP, SQL, MySQL, QuickBooks, proprietary timekeeping, accounting, sales rep call notes, CRMs, SharePoint, etc.), the producing party shall first identify the database type and version number, discuss providing the database dictionary (in whole or part) and any user manuals, or any other documentation describing the structure and/or content of the database and a list of all reports that can be generated from the database. Upon consultation with and written consent of the government, the standard format of all reports provided should be in comma separated values (.csv) format. The information that will be contained in the reports must be thoroughly explained to the government before production.

### 16.    Production of Photographs with Native File or Digitized ESI

Photographs shall be produced as single-page JPEG files with a resolution equivalent to the original image as they were captured/created. All JPEG files shall have extracted metadata/database fields provided in a Concordance® load file format as outlined in section 3 for "Other ESI."

### 17.    Production of Images from which Text Cannot be OCR Converted

An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow for OCR text conversion of certain images. The report shall include the DOCID or Bates number(s) corresponding to each such image.

### 18.    Production of ESI from Non-PC or Non-Windows-based Systems

If responsive ESI is in non-PC or non-Windows-based Systems (e.g., Apple, IBM mainframes, and UNIX machines, Android device, etc.), the ESI shall be produced after discussion with and written consent of the government about the format for the production of such data.

### 19.    Production of Native Files (When Applicable Pursuant to These Specifications)

Production of native files, as called for in these specifications, shall have extracted metadata/database fields provided in a Concordance® load file format as defined in the field specifications for "Other ESI" as outlined in section 3 as well as a placeholder image which indicates a native file is being produced.

*June 2019*

## Specifications for Production of ESI and Digitized ("Scanned") Images ("Production Specifications")

ESI shall be produced in a manner which is functionally usable by the government. The following are examples:

a. AutoCAD data, e.g., DWG and DXF files, shall be processed/converted and produced as single-page JPG image files and accompanied by a Concordance® Image formatted load file as described above. The native files shall be placed in a separate folder on the production media and linked by a hyperlink within the text load file.
b. GIS data shall be produced in its native format and be accompanied by a viewer such that the mapping or other data can be reviewed in a manner that does not detract from its ability to be reasonably understood.
c. Audio and video recordings shall be produced in native format and be accompanied by a viewer if such recordings do not play in a generic application (e.g., Windows Media Player).

## 20.   Bates Number Convention

All images should be assigned Bates numbers before production to the government. Each Bates number shall be a standard length, include leading zeros in the number, and be unique for each produced page. The numbers should be endorsed on the actual images at a location that does not obliterate, conceal, or interfere with any information from the source document. Native files should be assigned a single Bates number for the entire file which will represent the native document in the Opticon/ Concordance® Image Cross Reference file. The load file will include a reference to the native file path and utilize the NATIVELINK metadata field). The Bates number shall not exceed 30 characters in length and shall include leading zeros in the numeric portion. The Bates number shall be a unique number given sequentially (i.e. page one of document is PREFIX0000000001, page two of the same document is PREFIX0000000002) to each page (when assigned to an image) or to each document (when assigned to a native file). If the parties agree to a rolling production, the numbering convention shall remain consistent throughout the entire production. There shall be no spaces between the prefix and numeric value. If suffixes are required, please use "dot notation." Below is a sample of dot notation:

|  | *Document #1* | *Document #2* |
|---|---|---|
| *Page #1* | PREFIX00000000001 | PREFIX00000000002 |
| *Page #2* | PREFIX00000000001.002 | PREFIX00000000002.002 |
| *Page #3* | PREFIX00000000001.003 | PREFIX00000000002.003 |

## 21.   Media Formats for Storage and Delivery of Production Data

Electronic documents and data shall be delivered on any of the following media:

a. CD-ROMs and/or DVD-R (+/-) formatted to ISO/IEC 13346 and Universal Disk Format 1.02 specifications; Blu-ray.
b. External hard drives (USB 3.0 or higher, formatted to NTFS format specifications) or flash drives.

*June 2019*

## Specifications for Production of ESI and Digitized ("Scanned") Images ("Production Specifications")

c. Storage media used to deliver ESI shall be appropriate to the size of the data in the production.

d. Media should be labeled with the case name, production date, Bates range, and producing party.

### 22.   Virus Protection and Security for Delivery of Production Data

Production data shall be free of computer viruses. Any files found to include a virus shall be quarantined by the producing party and noted in a log to be provided to the government. Password protected or encrypted files or media shall be provided with corresponding passwords and specific decryption instructions. All encryption software shall be used with approval by and with the written consent of the government.

### 23.   Compliance and Adherence to Generally Accepted Technical Standards

Production shall be in conformance with standards and practices established by the National Institute of Standards and Technology ("NIST" at www.nist.gov), U.S. National Archives & Records Administration ("NARA" at www.archives.gov), American Records Management Association ("ARMA International" at www.arma.org), American National Standards Institute ("ANSI" at www.ansi.org), International Organization for Standardization ("ISO" at www.iso.org), and/or other U.S. Government or professional organizations.

### 24.   Read Me Text File

All deliverables shall include a "read me" text file at the root directory containing: total number of records, total number of images/pages or files, mapping of fields to plainly identify field names, types, lengths, and formats. The file shall also indicate the field name to which images will be linked for viewing, date and time format, and confirmation that the number of files in load files matches the number of files produced.

### 25.   Exception Report

An exception report, in .csv format, shall be included, documenting any production anomalies during the collection, processing, and production phases. The report shall provide all available BEGDOC# or DOCID values and metadata listed in section 3, including but not limited to file names and file paths for all affected files.

### 26.   Transmittal Letter to Accompany Deliverables

All deliverables should be accompanied by a transmittal letter including the production date, case name and number, producing party name, and Bates range produced. Technical instructions on how to decrypt media should be included in the transmittal letter but the password should be transmitted separately.

-XXX-

# EXHIBIT 2

Civil Investigative Demand-Oral Testimony/Interrogatory Responses/Document Requests

# United States Attorney's Office for the Eastern District of Washington
**Spokane, WA 99201**

TO: Elyssa Young                                    Civil Investigative Demand EDWA 21-005
2522 N. Proctor St. #524
Tacoma, Washington 98406

This Civil Investigative Demand is issued pursuant to the False Claims Act, 31 U.S.C. §§ 3729-3733, in the course of a False Claims Act investigation to determine whether there is or has been a violation of 31 U.S.C. § 3729. The False Claims Act investigation concerns allegations that Sunrhys, LLC (you or Sunrhys) have violated the False Claims Act, 31 U.S.C. § 3729, by knowingly submitting and causing to be submitted false claims, and making and using false statements material to the payment of false claims. Specifically, the investigation concerns allegations that between January 2019 and the present (hereinafter the "relevant time period"), you knowingly overcharged your tenant in excess of the allowable and agreed-upon amount, and falsely and fraudulently sought and obtained reimbursement of federal U.S. Department of Housing and Urban Development-Veterans Affairs Support Housing (HUD-VASH) funding in violation of program requirements for your property located at 3712 Mill Creek Road, Walla Walla, Washington 99362 (The Mill Creek Road Property).

This Demand requires you to provide oral testimony, documents, and answers to interrogatories to the Federal Government. This is the original of the Demand; no copies have been served on other parties. The information and documents provided in response to this Demand may be shared, used, and disclosed as provided by 31 U.S.C. § 3733.

## A. **Documentary Material**

You are required by this Demand to produce any and all documents in your possession, custody or control responsive to the requests stated in Attachment A hereto.

You must make this material available to Assistant United States Attorneys Dan Fruchter, and Tyler Tornabene, who have been designated as False Claims Act custodians in this case.

Unless otherwise stated, the relevant time period is from January 2019, to the present. The

1

terms "document" and "documents" as used in this Civil Investigative Demand and any attachment(s) are used in the broadest sense permitted by the Federal Rules of Civil Procedure 26 and 34 and include, but are not limited to, any written or electronically stored information. The term "communication" should be interpreted by you in the broadest possible sense and means the transmittal or exchange of information by any means, whether by chance or design, and includes, but is not limited to, telephone conversations, conversations in meetings, letters, memoranda, notes, telegraphic and telex communications, by face-to-face encounter, by regular mail or courier, by telephone, or by other means of electronic communication, whether transmitted in interstate or intrastate commerce.

The General Instructions provided in Attachment A to this Civil Investigative Demand shall govern your production of documents responsive to this Civil Investigative Demand. The Specifications for Production of ESI and Digitized ("Scanned") Images (Attachment B) shall further govern your production of all materials, including hard copies of documents and electronically stored (ESI) materials and digitized images, responsive to this Civil Investigative Demand.

These documents shall be produced no later than thirty (30) days from the receipt of this Demand, at the United States Attorney's Office for the Eastern District of Washington, 920 W. Riverside Ave., Room 340, Spokane, Washington 99201. Mr. Fruchter and Mr. Tornabene can be reached at (509) 353-2767. The production of documentary material in response to this Demand must be made under a sworn certificate in the form printed in this Demand.

## B.    Interrogatory Responses

Unless otherwise stated, the relevant time period is from January 1, 2019, to the present. You are required by this Demand to answer the interrogatories stated in Attachment A hereto. The answers to the interrogatories must be submitted no later than thirty (30) days from the receipt of this Demand, to the United States Attorney's Office for the Eastern District of Washington, 920 W. Riverside Ave., Spokane, Washington 99201, or at such time and in such other place or manner as may be agreed upon by Assistant United States Attorneys Dan Fruchter, Tyler Tornabene, and you. The interrogatories shall be answered under oath and verified by you. If you object to any interrogatory, the reasons for the objection shall be stated with specificity. The instructions set forth in Attachment A will govern your answers.

## C.  Oral Testimony

You are further required by this Demand to give oral testimony under oath, commencing seven (7) days from the date of receipt of this Demand, at 9:00 a.m., at the United States Attorney's

Office for the Eastern District of Washington, 920 W. Riverside Ave., Spokane, Washington 99201, or at such time and in such other place as may be agreed upon by Mr. Fruchter and/or Mr. Tornabene and you. The testimony will be taken stenographically and also may be recorded audiovisually.

AUSAs Dan Fruchter and Tyler Tornabene are False Claims Act investigators who may conduct the examination, and the custodians to whom the transcript of the deposition will be delivered. Your attendance and testimony at the oral examination are necessary to the conduct of the False Claims Act investigation described above. You have the right to be accompanied by an attorney and any other personal representative at the oral examination.

The general purposes for which this Civil Investigative Demand is issued are to discover your knowledge, between January 1, 2019 and the present, about claims for reimbursement of HUD-VASH funding made by you with respect to the Mill Creek Road Property. Some specific areas of inquiry, while not intended to be exclusive, are set forth below:

1.    Claims for reimbursement of HUD-VASH funding with respect to the Mill Creek Road Property.

2.    Your communications with tenants, government entities and employees, and other persons or entities concerning the Mill Creek Road Property.

3.    Your understanding of, efforts to comply with, program requirements, regulations, and the terms of the Housing Assistance Payments (HAP) contract and lease with respect to the Mill Creek Road Property.

4.    Rent payments by or on behalf of any tenants with respect to the Mill Creek Road Property.

Issued at Spokane, WA, this 29th day of March, 2021

Joseph H. Harrington
Acting United States Attorney for the
Eastern District of Washington

3

# Attachment A

INSTRUCTIONS FOR CIVIL INVESTIGATIVE DEMAND NO. EDWA 21-005

## A. DEFINITIONS USED IN THIS CIVIL INVESTIGATIVE DEMAND

The following definitions (both in the singular and in the plural) shall apply:

1. "Sunrhys" shall refer to Sunrhys, LLC, along with any and all of your predecessors in interest, successors in interest, parents, subsidiaries, related entities or organizations, brother or sister entities, affiliates, facilities, properties, owners, governors, employees, officers, agents, board members, or subsidiaries.

2. The term "documents" shall have the same meaning as set forth in Federal Rule of Civil Procedure 34(a)(l)(A) and shall mean and refer to paper documents and electronically stored information, as that term is defined in the 2006 Advisory Committee Note to Rule 34(a) ("Rule 34(a)(l) is expansive and includes any type of information that is stored electronically"). Paper documents shall include, but not be limited to, correspondence, emails, communications, reports, studies, memoranda, directives, policies, agendas, minutes, resolutions, worksheets, graphs, charts, addenda and attachments, written, graphic, and photographic matter, sound recordings, however produced or reproduced, of every kind and description, including, but not limited to, all copies and drafts thereof that have annotation, notes, modifications or other alterations.

3. "Communication" shall mean the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), and any documents concerning communications.

4. "Concerning" or "concerns" shall mean relating to, referring to, describing, evidencing, or constituting.

**B. INSTRUCTIONS**

1.  Production of Electronically Stored Information.    The United States Attorney for the Eastern District of Washington hereby requests that you produce documents that are maintained as electronically stored information in a logically unitized format.    Logical unitization of documents requires you to ensure, among other things, that a particular document captures all of its respective pages and that document relationships, such as a "parent" document (*e.g.*, a fax cover sheet) and "children" attachments (*e.g.*, a faxed letter and attachment to the letter), are preserved. The United States Attorney for the Eastern District of Washington hereby incorporates by reference into these instructions and the Civil Investigative Demand, Attachment B, "Specifications for Production of ESI and Digitized ("Scanned") Images ("Production Specification")" requests that documents be produced in accordance with those specifications or in native format, except as specifically agreed to between you and the identified False Claims Act custodian.

2.  Privilege Log.  If you assert a privilege regarding the production of any document, with respect to each document to which the privilege is asserted, state the following:

(a) the privilege claimed;

(b) precise statement of the facts upon which the claim of privilege is based; and

(c) the following information as to each purportedly privileged document:

    (i)  the nature of the document, *e.g.*, letter, memorandum, photograph, tape, electronic copy, etc.;

    (ii)  the date on which it was prepared;

    (iii) the identity of the person by whom it was prepared;

6

(iv) the identity of each person to whom it was delivered or sent; and

(v) the identity of the person or entity that presently has custody or control of such document.

In addition, any attachment to an allegedly privileged document should be identified on the Privilege Log separately from the document to which it is attached. Moreover, an e-mail containing a string of related e-mails (replies or forwarding the original text) should not be identified on the Privilege Log as a single document. Instead, each e-mail in the string should be identified on the Privilege Log separately with a notation indicating the previous e-mails it contains.

3. Unless specifically stated so within, these requests require production of the entire document.

4. Materials required by the Civil Investigative Demand should be accompanied by an index identifying each document or other materials and the item or items of the Civil Investigative Demand to which it refers.

## DOCUMENT REQUESTS

1. Documents concerning any claims for reimbursement made or submitted by you or by Sunrhys, LLC (Sunrhys) of HUD-VASH funding or other federal funding with respect to the Mill Creek Road Property.

2. Documents concerning any communications, whether external or internal, concerning the Mill Creek Road Property, including, but not limited to, any communications with or concerning any tenant, rent payment, federal, state, or local government entity, claim for reimbursement, or agreement concerning the Mill Creek Road Property.

3. Documents concerning any agreement with any tenant or with any federal, state, or local government entity concerning the Mill Creek Road Property.

7

4.      Documents concerning your or Sunrhys' understanding of, efforts to comply with, program requirements, regulations, and the terms of the Housing Assistance Payments (HAP) contract and lease with respect to the Mill Creek Road Property.

5.      Documents concerning any rent payments to you or to Sunrhys by or on behalf of any tenants with respect to the Mill Creek Road Property.

## INTERROGATORIES

1.      List each claim for reimbursement of federal, state, or local governments funds made by you or by Sunrhys with respect to the Mill Creek Road Property, including:

      a.   The date any such claim was made or submitted;

      b.   The date of payment of any such claim;

      c.   The means by which payment was made;

      d.   The amount claimed;

      e.   The amount paid;

      f.   The agreement under which any such claim was submitted;

      g.   The time period covered by or pertaining to any such claim.

2.      List each rent payment made to you  or to Sunrhys with respect to the Mill Creek Road Property, including:

      a.   The date of payment;

      b.   The means by which payment was made;

      c.   The amount paid;

8

    d.   The agreement under which any such claim was submitted;

    e.   The time period covered by or pertaining to any such claim.

9

# Attachment B

*June 2019*

## Specifications for Production of ESI and Digitized ("Scanned") Images ("Production Specifications")

### Collection of Electronically Stored Information (ESI)

Careful consideration should be given to the methodology, implementation and documentation of ESI collection to ensure that all responsive data and metadata are preserved in the collection process. Consideration should also be given as to whether production media should be encrypted when producing to the government when required by law (i.e. Health Insurance Portability and Accountability Act (HIPAA), Family Educational Rights and Privacy Act (FERPA), etc. *See* Section 22 below.

### 1.    Specification Modifications

Any modifications or deviations from the Production Specifications may be done only with the express permission of the government and these modifications or deviations should be communicated to the government and approved by the government in written form. Any responsive data or documents that exist in locations or native forms not discussed in these Production Specifications remain responsive and, therefore, arrangements should be made with the government to facilitate their production.

### 2.    Production Format of ESI and Imaged Hard Copy Documents

Responsive ESI and imaged hard copy shall be produced in the format outlined below. All ESI, except as outlined below in sections 5 – 19, shall be rendered to TIFF image format, and accompanied by an Opticon/Concordance® Image Cross Reference file. All applicable metadata/database (see section 3 below) shall be extracted and provided in Concordance® load file format.

   a.    **Image File Format:** All documents shall be produced in black and white TIFF format unless the image requires color. An image requires color when color in the document adds emphasis to information in the document or is itself information that would not be readily apparent on the face of a black and white image.

   b.    When producing black and white paper documents scanned to images, or rendered ESI, they shall be produced as 300 dpi, 1 bit, single-page TIFF files, CCITT Group IV (2D Compression). When producing in *color,* paper documents scanned to images, or rendered ESI, they shall be produced as 300 dpi single-page JPG. Images should be uniquely and sequentially Bates numbered and unless otherwise specified, Bates numbers should be an endorsement on each image.
      i.    All TIFF file names shall include the unique Bates number burned into the image. (See section 20, below, regarding Bates number instructions.)
      ii.   All TIFF image files shall be stored with the ".tif" extension.
      iii.  Images shall be OCR'd using standard COTS products.
         1.   An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow for OCR text conversion of certain images. The report shall

1

**Specifications for Production of ESI and Digitized ("Scanned") Images ("Production Specifications")**

include the DOCID or Bates number(s) corresponding to each such image.

    a.  All pages of a document or all pages of a collection of documents that comprise a folder or other logical grouping, including a box, shall be delivered on a single piece of media.

    b.  No image folder shall contain more than 2,000 images.

c. **Opticon/Concordance® Image Cross Reference file:** Images should be accompanied by an Opticon load file that associates each Bates number with its corresponding single-page TIFF image file. The Cross Reference file should also contain the relative image file path for each Bates numbered page. The Opticon/Concordance® Image Cross Reference file is a page level load file, with each line representing one image.

Below is a sample:

```
REL000000001,,.\IMAGES\001\REL000000001.TIF,Y,,,
REL000000002,,.\IMAGES\001\REL000000002.TIF,,,,
REL000000003,,.\IMAGES\001\REL000000003.TIF,,,,
REL000000004,,.\IMAGES\001\REL000000004.TIF,Y,,,
REL000000005,,.\IMAGES\001\REL000000005.TIF,,,,
```

The fields are, from left to right:

- Field One – (REL000000001) – the Bates Number. This value must be unique for each row in the OPT file. The first page of each document must match the DOCID or BEGDOC# value of the respective document.
- Field Two – (blank) – the volume identifier. This field is not required.
- Field Three – (.\IMAGES\001\REL000000001.TIF) – The relative file path to the image to be loaded.
- Field Four – (Y) – the document marker. A "Y" indicates the start of a unique document.
- Field Five – (blank) – The folder indicator. This field is not required, and typically is not used.
- Field Six – (blank) – The box indicator. This field is not required, and typically is not used.
- Field Seven – (blank) – The page count. This field is not required.

d. **Concordance® Load File**: Images should also be accompanied by a flat, document-level load file to provide the metadata and native files containing delimited text that will populate fields in a searchable, flat database environment. The file encoding must be one of four types: Western European (Windows), Unicode (UTF16), Big-Endian Unicode or UTF8. The file should contain the required fields listed below in section 3.

*June 2019*

**Specifications for Production of ESI and Digitized ("Scanned") Images ("Production Specifications")**

1. Text delimited load files are defined using the standard Concordance delimiters. For example:

   | | |
   |---|---|
   | *Field Separator* | *¶ or Code 020* |
   | *Text Qualifier* | *þ or Code 254* |
   | *Newline* | *® or Code 174* |
   | *Multi-value* | *° or Code 167* |
   | *Nested values* | *\ or Code 092* |

2. This load file should contain the relative file path to the individual multi-page, document level text files.
3. This load file should also contain the relative file path to all provided native files, such as Microsoft Excel or PowerPoint files.
4. There should be one line for every record in a collection.
5. The load file must contain a header listing the metadata/database fields contained within. For example, if the data file consists of a First Page of a Record (BegDoc#), Last Page of a Record (ending Bates / ENDDOC#), DOCID, DOCDate, File Name, and a Title, then the structure may appear as follows:

   þBEGDOCþ¶þENDDOCþ¶þDOCIDþ¶þDOCDATEþ¶þFILENAMEþ¶þTITLEþ

d. **The extracted/OCR** text should be provided for each document as a separate single text file. The file name should match the BEGDOC# or DOCID for that specific record and be accompanied by the .txt extension.

e. **Directory and folder structure:** The directory structure for productions should be:

   \*CaseName*\**LoadFiles**
   \*CaseName*\**Images** < For supporting images (can include subfolders as needed, should not include more than 2,000 files per folder)
   \*CaseName*\**Natives** <Native Files location (can include subfolders as needed, should not include more than 2,000 files per folder)
   \*CaseName*\**Text** <Extracted Text files location (can include subfolders as needed, should not include more than 2,000 files per folder)

*June 2019*

### Specifications for Production of ESI and Digitized ("Scanned") Images
### ("Production Specifications")

3.      **Required Metadata/Database Fields**

A "✓" denotes that the indicated field should be present in the load file produced. "Other ESI" includes data discussed in sections 5 – 19 below, but does not include email, email repositories (section 11), "stand alone" items (section 12), and imaged hard copy material (section 9). Email, email repositories, and "stand alone" materials (section 12) should comply with "Email" column below. Imaged hard copy materials should comply with the "Hard Copy" column. The parties will meet and confer about any field which cannot be populated automatically (i.e. would require manual population of information).

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| COLLECTION SOURCE | Name of the Company/Organization data was collected from | Text | 160 | ✓ | ✓ | ✓ |
| SOURCE ID (BOX #) | Submission/volume/box number | Text | 10 | ✓ | ✓ | ✓ |
| CUSTODIAN | Custodian/Source - format: Last, First or ABC Dept. | Text | 160 | ✓ | ✓ | ✓ |
| DUPECUSTODIAN | Custodian/Source – all custodians who had the document before de-duplication; format: Last, First or ABC Dept. | Text | Unlimited | | ✓ | ✓ |
| DUPECUSTODIAN FILE PATH | Listing of all the file locations of the document before de-duplication | Text | Unlimited | | ✓ | ✓ |
| AUTHOR | Creator of the document | Text | 500 | | | ✓ |
| BEGDOC# | Start Bates (including prefix) - No spaces | Text | 60 | ✓ | ✓ | ✓ |
| ENDDOC# | End Bates (including prefix) - No spaces | Text | 60 | ✓ | ✓ | ✓ |
| DOCID | Unique document Bates # or populate with the same value as Start Bates (DOCID = BEGDOC#) | Text | 60 | ✓ | ✓ | ✓ |
| PGCOUNT | Page Count | Number | 10 | ✓ | ✓ | ✓ |
| GROUPID | Contains the Group Identifier for the family, in order to group files with their attachments | Text | 60 | | ✓ | ✓ |

4

*June 2019*

**Specifications for Production of ESI and Digitized ("Scanned") Images ("Production Specifications")**

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| PARENTID | Contains the Document Identifier of an attachment's parent | Text | 60 | | ✓ | ✓ |
| ATTACHIDS | Child document list; Child DOCID or Child Start Bates | Text – semicolon delimited | Unlimited | ✓ | ✓ | ✓ |
| ATTACHLIST | List of Attachment filenames | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| BEGATTACH | Start Bates number of parent | Text | 60 | ✓ | ✓ | ✓ |
| ENDATTACH | End Bates number of last attachment | Text | 60 | ✓ | ✓ | ✓ |
| PROPERTIES | Privilege notations, Redacted, Document Withheld Based On Privilege | Text – semicolon delimited | Unlimited | ✓ | ✓ | ✓ |
| RECORD TYPE | Use the following choices: Image, Loose E-mail, E-mail, E-Doc, Attachment, Hard Copy or Other. If using Other, please specify what type after Other | Text | 60 | ✓ | ✓ | ✓ |
| FROM | Sender (i.e. : e-mail address, Last name, First name) | Text | 160 | | ✓ | ✓ |
| TO | Recipient (i.e. : e-mail address, Last name, First name) | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| CC | Carbon Copy Recipients (i.e.: e-mail address, Last name, First name) | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| BCC | Blind Carbon Copy Recipients (i.e. : e-mail address, Last name, First name) | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| SUBJECT | Subject line of email | Text | Unlimited | | ✓ | |
| TITLE | Document Title | Text | Unlimited | | | ✓ |
| CONVINDEX | E-mail system ID used to track replies, forwards, etc. | Text | Unlimited | | ✓ | |

*June 2019*

**Specifications for Production of ESI and Digitized ("Scanned") Images
("Production Specifications")**

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| DOCDATE | Last Modified Date for files and Sent date for e-mail, this field inherits the date for attachments from their parent.  Do not provide 00/00/0000. | Date | MM/DD/YYYY | | ✓ | ✓ |
| TEXT FILEPATH | Relative file path of the text file associated with either the extracted text or the OCR | Text | Unlimited | ✓ | ✓ | ✓ |
| DATE TIME SENT | Date and time Sent (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | |
| DATE TIME CRTD | Date Created (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME SVD | Date Saved (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |

*June 2019*

**Specifications for Production of ESI and Digitized ("Scanned") Images ("Production Specifications")**

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| DATE TIME MOD | Date Last Modified (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME RCVD | Date Received (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | |
| DATE TIME ACCD | Date Accessed (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| TIME ZONE OFFSET | Time zone of collection locality, relative to Coordinated Universal Time (UTC). E.g., for US Central Standard Time (CST), the value for this field should be -6.0 | Decimal | 10 | | ✓ | |
| FILE SIZE | Native File Size in KBs | Decimal | 10 | | | ✓ |
| FILE NAME | File name - name of file as it appeared in its original location | Text | Unlimited | | | ✓ |
| APPLICATION | Application used to create native file (e.g. Excel, Outlook, Word) | Text | 160 | | ✓ | ✓ |

7

*June 2019*

**Specifications for Production of ESI and Digitized ("Scanned") Images**
**("Production Specifications")**

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| FILE EXTENSION | Extension for the file (e.g. .doc, .pdf, .wpd) | Text | 10 | | ✓ | ✓ |
| FILEPATH | Data's original source full folder path | Text | Unlimited | | ✓ | ✓ |
| NATIVE LINK | Relative file path location to the native file | Text | Unlimited | | ✓ | ✓ |
| FOLDER ID | Complete E-mail folder path (e.g. Inbox\Active) or Hard Copy container information (e.g. folder or binder name) | Text | Unlimited | ✓ | ✓ | |
| HASH VALUE | Identifying value of an electronic record that is used for deduplication during processing. MD5 or SHA1 hash algorithms may be used, but must be kept consistent throughout all productions and communicated to Government. | Text | Unlimited | | ✓ | ✓ |
| MESSAGEHEADER | E-mail header. Can contain IP address | Text | Unlimited | | ✓ | |
| ATTACHMCOUNT | Number of attachments (any level child document) associated with a ParentID | Text | 10 | | ✓ | |
| FILE TYPE | Description that represents the file type to the Windows Operating System. E.g., Adobe Portable Document Format, Microsoft Word 97 – 2003, or Microsoft Office Word Open XML Format. | Text | 160 | | ✓ | ✓ |
| HAS HIDDEN CONTENT | Identifies whether the document has comments, track changes or other hidden content associated with it | Text | Yes/No | | ✓ | ✓ |

*June 2019*

**Specifications for Production of ESI and Digitized ("Scanned") Images**
**("Production Specifications")**

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| MESSAGE TYPE | Exchange Message class or equivalent | Text | 60 | | ✓ | |
| EXTENDED PROPERTIES | For PDFs Only | Text | Unlimited | | ✓ | ✓ |
| HAS REDACTIONS | Identifies whether a record has been produced with redactions; should be populated with Y for records with redactions and N for records without redactions. | Text | Yes/No | ✓ | ✓ | ✓ |

### 4. Search, De-Duplication, Near-Duplicate Identification, Technology Assisted Review, E-mail Conversation Threading and Other Culling Procedures

a. De-duplication of exact hash copies shall be performed globally – across all custodians. The custodian of each record shall be populated in the DupeCustodian field.

b. All files found on the National Institute of Standards and Technology (NIST) list, commonly referred to as deNISTing, should be excluded from delivery to the Government. All available metadata from files withheld from delivery due to the deNISTing process will be available upon request.

c. All files should be globally de-duplicated with the following conditions:

   i. The "DupeCustodian" metadata field (listing of all custodians who had the document before de-duplication) must be provided with the document production.

   ii. The "DupeCustodian File Path" metadata field (listing all the file locations of the document before de-duplication) must be provided with the document production.

   iii. All files and metadata for the duplicate documents removed during de-duplication must be preserved and available for production upon request.

   iv. No customization of hashing may occur without prior express approval by the Government.

   v. De-duplication must be done by document family, not by individual document.

   vi. A detailed description of the steps taken to de-duplicate (including the process of obtaining hash values) must be provided to the Government. For every production after the first, a separate Unified Custodian overlay shall be provided. If no overlay is necessary due to the fact that no documents de-duped out in connection with previously produced documents, this shall be

### Specifications for Production of ESI and Digitized ("Scanned") Images ("Production Specifications")

expressly stated in the cover letter accompanying the subsequent production(s).

d. The recipient shall not use any other procedure to cull, filter, group, separate or de-duplicate, or near-deduplicate, etc. (i.e., reduce the volume of) responsive material before discussing with and obtaining the written approval of the government. All objective coding (e.g., near duplicate ID or e-mail thread ID) shall be discussed and produced to the government as additional metadata fields. The recipient will not employ analytic software or technology to search, identify, or review potentially responsive material, including but not limited to, technology assisted review or predictive coding, without first discussing with the government.

### 5.    Hidden Text

All hidden text (e.g. track changes, hidden columns, mark-ups, notes) shall be expanded and rendered in the image file. For files that cannot be expanded the native files shall be produced with the image file.

### 6.    Embedded Files

All non-graphic embedded objects (Word documents, Excel spreadsheets, .wav files, etc.) that are found within a file shall be extracted and produced. For purposes of production, the embedded files shall be treated as attachments to the original file, with the parent/child relationship preserved.

### 7.    Image-Only Files

All image-only files (non-searchable .pdfs, multi-page TIFFs, Snipping Tool and other screenshots, etc., as well as all other images that contain text) shall be produced with OCR text and metadata/database fields identified in section 3 for "Other ESI."

### 8.    Encrypted Files

Any data (whether individual files or digital containers) that is protected by a password, encryption key, digital rights management, or other encryption scheme, shall be decrypted prior to processing for production.

a. The unencrypted text shall be extracted and provided per section 2.d. The unencrypted files shall be used to render images and provided per sections 2.a and 2.b. The unencrypted native file shall be produced pursuant to sections 10-19.

b. If such protected data is encountered but unable to be processed, each file or container shall be reported as an exception in the accompanying Exception Report (pursuant to section 25) and shall include all available metadata associated with the data, including custodian information.

*June 2019*

### Specifications for Production of ESI and Digitized ("Scanned") Images
### ("Production Specifications")

#### 9.    Production of Imaged Hard Copy Records

All imaged hard copy material shall reflect accurate document unitization including all attachments and container information (to be reflected in the PARENTID, ATTACHID, BEGATTACH, ENDATTACH and FOLDERID).

  a. Unitization in this context refers to identifying and marking the boundaries of documents within the collection, where a document is defined as the smallest physical fastened unit within a bundle. (e.g., staples, paperclips, rubber bands, folders, or tabs in a binder).
  b. The first document in the collection represents the parent document and all other documents will represent the children.
  c. All imaged hard copy documents shall be produced as 300 dpi single-page TIFF files, CCITT Group IV (2D Compression). All documents shall be produced in black and white TIFF format unless the image requires color. An image requires color when color in the document adds emphasis to information in the document or is itself information that would not be readily apparent on the face of a black and white image. Images identified as requiring color shall be produced as color 300 dpi single-page JPEG files.
  d. All objective coding (e.g., document date or document author) should be discussed and could be produced to the government as additional metadata/database fields should they be deemed as necessary.

#### 10.    Production of Spreadsheets and Presentation Files

All spreadsheet and presentation files (e.g. Excel, PowerPoint) shall be produced in the unprocessed "as kept in the ordinary course of business" state (i.e., in native format), with an associated placeholder image and endorsed with a unique Bates number. *See* section 20 below. The file produced should maintain the integrity of all source, custodian, application, embedded and related file system metadata.

#### 11.    Production of E-mail Repositories

E-mail repositories, also known as e-mail databases (e.g., Outlook PST, Lotus NSF), can contain a variety of items, including: messages, calendars, contacts, tasks, etc. E-mail database systems should not be produced without consultation with and written consent of the government about the format for the production of such databases.

#### 12.    Production of Items Originally Generated in E-mail Repositories but Found and Collected Outside of E-mail Repositories, i.e., "Stand-alone" Items

Any parent e-mail or other parent items (e.g., calendar, contacts, tasks, notes, etc.) found and collected outside of e-mail repositories (e.g., items having extensions .msg, .htm, .mht, etc.), shall be produced with the "Loose E-mail" metadata fields outlined in section 3, including but not limited to any attachments, maintaining the family (parent/child) relationship.

11

*June 2019*

### Specifications for Production of ESI and Digitized ("Scanned") Images
### ("Production Specifications")

### 13.    Production of Instant Messenger (IM), Voicemail Data, Audio Data, Video Data, Text Messages, etc.

The responding party shall identify, collect, and produce any and all data which is responsive to the requests which may be stored in audio or video recordings, cell phone/PDA/Blackberry/smart phone data, tablet data, voicemail messaging data, instant messaging, text messaging, conference call data, video/audio conferencing (e.g., GoTo Meeting, WebEx), and related/similar technologies. However, such data, logs, metadata or other files related thereto, as well as other less common but similar data types, shall be produced after consultation with and written consent of the government about the format for the production of such data.

The expectation of the government is that all familial relationships for all data will be maintained. Similiarly to email conversations and families, the expectation is that all messages/texts in a conversation will be provided the same conversation index and groupid data (maintaining the familial relationship) allowing the government to read the entire conversation in context. Messages should be produced to align with the formats listed in section 2 and as individual Unicode text files, and attachments should be produced as native files with images and OCR text.

### 14.    Production of Social Media

Prior to any production of responsive data from social media (e.g., Twitter, Facebook, Google+, LinkedIn, etc.), the producing party shall first discuss with the government the potential export formats before collecting the information, to ensure it is collected and produced in a way that preserves the original metadata, has a clear chain of custody, and provides as much information as possible regarding the source and history of each individual communication.

Social media platforms offer different functions, forms of content, and capability for downloading accounts. Because of these differences, prior to collection of social media data, the producing party must discuss with the government the available export and production methods and formats that the producing party is considering. Unless the government agrees to an alternative in writing, regardless of the social media platform, productions of social media content must meet the following general requirements: (1) separate (2) searchable (3) static images of (4) each responsive posting on the social media platform, (5) all related content (e.g., comments, likes, share or re-transmittal information, images, videos, linked documents and content), and (6) associated metadata (e.g., user name(s), date, and time of all posts, comments, likes, share or re-transmittals).

These general requirements are in addition to any more specific requirements in a particular request (e.g., geolocation data), and the producing party must ask the government about any perceived conflict between these requirements and another source of specifications or requirements. If available from the social media platform or through social media data processing software, files that facilitate interactive review of the data

*June 2019*

**Specifications for Production of ESI and Digitized ("Scanned") Images ("Production Specifications")**

(i.e., html files) as well as load files in .csv format must be produced with the associated content.

### 15.    Production of Structured Data

Prior to any production of responsive data from a structured database (e.g., Oracle, SAP, SQL, MySQL, QuickBooks, proprietary timekeeping, accounting, sales rep call notes, CRMs, SharePoint, etc.), the producing party shall first identify the database type and version number, discuss providing the database dictionary (in whole or part) and any user manuals, or any other documentation describing the structure and/or content of the database and a list of all reports that can be generated from the database.  Upon consultation with and written consent of the government, the standard format of all reports provided should be in comma separated values (.csv) format.  The information that will be contained in the reports must be thoroughly explained to the government before production.

### 16.    Production of Photographs with Native File or Digitized ESI

Photographs shall be produced as single-page JPEG files with a resolution equivalent to the original image as they were captured/created.  All JPEG files shall have extracted metadata/database fields provided in a Concordance® load file format as outlined in section 3 for "Other ESI."

### 17.    Production of Images from which Text Cannot be OCR Converted

An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow for OCR text conversion of certain images.  The report shall include the DOCID or Bates number(s) corresponding to each such image.

### 18.    Production of ESI from Non-PC or Non-Windows-based Systems

If responsive ESI is in non-PC or non-Windows-based Systems (e.g., Apple, IBM mainframes, and UNIX machines, Android device, etc.), the ESI shall be produced after discussion with and written consent of the government about the format for the production of such data.

### 19.    Production of Native Files (When Applicable Pursuant to These Specifications)

Production of native files, as called for in these specifications, shall have extracted metadata/database fields provided in a Concordance® load file format as defined in the field specifications for "Other ESI" as outlined in section 3 as well as a placeholder image which indicates a native file is being produced.

*June 2019*

**Specifications for Production of ESI and Digitized ("Scanned") Images ("Production Specifications")**

ESI shall be produced in a manner which is functionally usable by the government. The following are examples:

a. AutoCAD data, e.g., DWG and DXF files, shall be processed/converted and produced as single-page JPG image files and accompanied by a Concordance® Image formatted load file as described above. The native files shall be placed in a separate folder on the production media and linked by a hyperlink within the text load file.

b. GIS data shall be produced in its native format and be accompanied by a viewer such that the mapping or other data can be reviewed in a manner that does not detract from its ability to be reasonably understood.

c. Audio and video recordings shall be produced in native format and be accompanied by a viewer if such recordings do not play in a generic application (e.g., Windows Media Player).

**20.    Bates Number Convention**

All images should be assigned Bates numbers before production to the government. Each Bates number shall be a standard length, include leading zeros in the number, and be unique for each produced page. The numbers should be endorsed on the actual images at a location that does not obliterate, conceal, or interfere with any information from the source document. Native files should be assigned a single Bates number for the entire file which will represent the native document in the Opticon/ Concordance® Image Cross Reference file. The load file will include a reference to the native file path and utilize the NATIVELINK metadata field). The Bates number shall not exceed 30 characters in length and shall include leading zeros in the numeric portion. The Bates number shall be a unique number given sequentially (i.e. page one of document is PREFIX0000000001, page two of the same document is PREFIX0000000002) to each page (when assigned to an image) or to each document (when assigned to a native file). If the parties agree to a rolling production, the numbering convention shall remain consistent throughout the entire production. There shall be no spaces between the prefix and numeric value. If suffixes are required, please use "dot notation." Below is a sample of dot notation:

|  | *Document #1* | *Document #2* |
|---|---|---|
| *Page #1* | PREFIX00000000001 | PREFIX00000000002 |
| *Page #2* | PREFIX00000000001.002 | PREFIX00000000002.002 |
| *Page #3* | PREFIX00000000001.003 | PREFIX00000000002.003 |

**21.    Media Formats for Storage and Delivery of Production Data**

Electronic documents and data shall be delivered on any of the following media:

a. CD-ROMs and/or DVD-R (+/-) formatted to ISO/IEC 13346 and Universal Disk Format 1.02 specifications; Blu-ray.

b. External hard drives (USB 3.0 or higher, formatted to NTFS format specifications) or flash drives.

### Specifications for Production of ESI and Digitized ("Scanned") Images ("Production Specifications")

 c. Storage media used to deliver ESI shall be appropriate to the size of the data in the production.

 d. Media should be labeled with the case name, production date, Bates range, and producing party.

### 22. Virus Protection and Security for Delivery of Production Data

Production data shall be free of computer viruses. Any files found to include a virus shall be quarantined by the producing party and noted in a log to be provided to the government. Password protected or encrypted files or media shall be provided with corresponding passwords and specific decryption instructions. All encryption software shall be used with approval by and with the written consent of the government.

### 23. Compliance and Adherence to Generally Accepted Technical Standards

Production shall be in conformance with standards and practices established by the National Institute of Standards and Technology ("NIST" at www.nist.gov), U.S. National Archives & Records Administration ("NARA" at www.archives.gov), American Records Management Association ("ARMA International" at www.arma.org), American National Standards Institute ("ANSI" at www.ansi.org), International Organization for Standardization ("ISO" at www.iso.org), and/or other U.S. Government or professional organizations.

### 24. Read Me Text File

All deliverables shall include a "read me" text file at the root directory containing: total number of records, total number of images/pages or files, mapping of fields to plainly identify field names, types, lengths, and formats. The file shall also indicate the field name to which images will be linked for viewing, date and time format, and confirmation that the number of files in load files matches the number of files produced.

### 25. Exception Report

An exception report, in .csv format, shall be included, documenting any production anomalies during the collection, processing, and production phases. The report shall provide all available BEGDOC# or DOCID values and metadata listed in section 3, including but not limited to file names and file paths for all affected files.

### 26. Transmittal Letter to Accompany Deliverables

All deliverables should be accompanied by a transmittal letter including the production date, case name and number, producing party name, and Bates range produced. Technical instructions on how to decrypt media should be included in the transmittal letter but the password should be transmitted separately.

-XXX-

# EXHIBIT 3

In The Matter Of:

## Civil Investigative Demand EDWA 21-004 & 21-005

Deposition of

Dave Huntoon

April 21, 2021



**Central Court Reporting**
800.442.DEPO
Support@centralcourtreporting.com
www.centralcourtreporting.com

```
 1                 UNITED STATES ATTORNEY'S OFFICE FOR THE

 2                   EASTERN DISTRICT OF WASHINGTON
                          Spokane, WA  99201
 3

 4

 5    In re:                            )  NO. _____
                                        )  CONFIDENTIAL
 6    CIVIL INVESTIGATIVE DEMAND EDWA 21-005   )
                                        )  Re:
 7    and                               )  SCHEDULED
                                        )  DEPOSITION OF
 8    CIVIL INVESTIGATIVE DEMAND EDWA 21-004   )  ELYSSA YOUNG
      _____

 9

10

11              DEPOSITION OF SPECIAL AGENT DAVE HUNTOON

12

13    Deposition upon oral examination of Special Agent

14    Dave Huntoon taken at the request of the US Attorney's

15    Office, before Danelle Bungen, CSR, at the office of the

16    US Attorney, 920 W. Riverside, GSA Conference Room,

17    Spokane, Washington, commencing at 9:24 A.M. on April 21,

18    2021, pursuant to the Federal Rules of Civil Procedure.

19

20

21

22

23

24

25
```

**CERTIFIED COPY**

```
 1     APPEARANCES:

 2     FOR THE US ATTORNEY'S OFFICE:

 3               US ATTORNEY'S OFFICE
                 Attorneys at Law
 4               920 W. Riverside - Suite 300
                 Spokane, Washington  99201
 5               BY:  DAN FRUCHTER, ESQ.
                      TYLER TORNABENE, ESQ.
 6                    (509) 353-2767

 7


 8     FOR THE SCHEDULED WITNESS ELYSSA Young:

 9               No appearance.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Central Court Reporting   800.442.3376

Confidential
Civil Investigative Demand EDWA 21-004 & 21-005          Dave Huntoon 04/21/2021

1                          I N D E X

2

    DEPONENT                                          PAGE

3    _____

4

    SPECIAL AGENT DAVE HUNTOON

5

    Examination by Mr. Fruchter                          5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    E X H I B I T S

 2
        NO.          DESCRIPTION                          PAGE
 3      _____

 4
        1      Civil Investigative Demand EDWA 21-005      7
 5
        2      Civil Investigative Demand EDWA 21-004      7
 6
        3      Letter dated 5/20/2020, Dawn Avery to       8
 7             Ms. Davis

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



Central Court Reporting    800.442.3376

```
 1                    SPECIAL AGENT DAVE HUNTOON

 2          was called as a witness by the US Attorney's Office,

 3          and having been first duly sworn, was examined and

 4          testified as follows:

 5

 6                         EXAMINATION

 7   BY MR. FRUCHTER:

 8   Q.   Good morning, sir.  Would you please state your name

 9        for the record?

10   A.   David Huntoon.

11   Q.   And by whom are you employed, Mr. Huntoon?

12   A.   I'm a Special Agent with the VA Office of Inspector

13        General.

14   Q.   And for how long have you been a special agent with

15        the VA's Office of Inspector General?

16   A.   At least three to four years.  I'd have to check.

17   Q.   And Special Agent Huntoon, would you just briefly

18        describe your job responsibilities as a special agent

19        with the VA's Office of Inspector General?

20   A.   So I'm a criminal investigator that would look into

21        any matters related to VA programs or operations that

22        might end in administrative criminal or civil

23        adjudication.

24   Q.   And your job responsibilities include investigating

25        False Claims Act actions as they relate to VA
```

1          programs?

2     A.   Yes.

3     Q.   And do part of your job responsibilities include, when

4          necessary, serving subpoenas pursuant to your

5          investigations?

6     A.   Yes.

7     Q.   And are you familiar with an investigation involving

8          Elyssa Young?

9     A.   Yes.

10    Q.   And just briefly describe the nature of that

11         investigation.

12    A.   Our office received information that Ms. Young was

13         involved as a landlord in a Housing and Urban

14         Development VA- -- I forget the acronym -- -SH,

15         HUD/VASH program as a landlord capacity, and there was

16         an allegation that she had broken the rules related to

17         that program.

18    Q.   And VASHA is VA Subsidized Housing?

19    A.   Yes.  Thank you.

20    Q.   And with regard to the rules that Ms. Young was

21         alleged to have broken, did those include overcharging

22         the VA tenants over and above what she was permitted

23         by law to charge the tenant in rent?

24    A.   Yes, that's the basis of the allegation.

25    Q.   And when you say she was involved as a landlord, was



```
 1        that through ownership of a particular company?
 2   A.   Yes.  An LLC known as Sunrhys, S-U-N-R-H-Y-S, LLC, was
 3        the entity that owned the property that was involved
 4        in the HUD/VASH relationship.
 5   Q.   And was Ms. Young one of the owners and governors of
 6        this Sunrhys entity?
 7   A.   Yes; she was an agent.
 8                  (Exhibit No. 1 - Civil Investigative Demand
 9                  EDWA 21-005 - marked for identification.)
10                  (Exhibit No. 2 - Civil Investigative Demand
11                  EDWA 21-004 - marked for identification.)
12   Q.   (BY MR. FRUCHTER)  And, Special Agent Huntoon, I'm
13        going to show you what's been marked as Exhibits 1 and
14        2.  Take your time and briefly familiarize yourself
15        with those two exhibits and let me know whether you
16        recognize them.
17   A.   I recognize these as the Civil Investigative Demands
18        related to this allegation; one addressed to Sunrhys,
19        LLC, and one addressed to specifically to
20        Elyssa Young.
21   Q.   Okay.  And is it your understanding that these Civil
22        Investigative Demands were issued by the acting United
23        States Attorney for the Eastern District of
24        Washington?
25   A.   Yes.
```



```
 1   Q.   And did Exhibits 1 and 2 relate to the investigation

 2        that you've described under the False Claims Act

 3        concerning Ms. Young's and Sunrhys' participation in

 4        the HUD/VASH program?

 5   A.   Yes.

 6   Q.   And did you have the opportunity to affect service of

 7        Exhibits 1 and 2 on Ms. Young?

 8   A.   Yes.  On April 14th, 2021, myself and Special Agent

 9        Darrell Zorn, D-A-R-R-E-L-L Z-O-R-N, responded --

10             May I look at that for the address

11        (indicating)?

12             -- responded down to --

13   Q.   It should be the same --

14   A.   -- Walla Walla.

15             No; the address where we contacted her is on

16        that letterhead (indicating).

17   Q.   This letterhead (indicating).

18   A.   My letterhead.

19   Q.   Oh, I see.  Yes.  We should probably mark it as

20        Exhibit 3 if you're going to reference it, but that

21        is --

22   A.   No problem.

23             MR. FRUCHTER:  Let's just take a moment and

24        do that.

25             (Exhibit No. 3 - Letter dated 5/20/2020,
```



Civil Investigative Demand EDWA 21-004 & 21-005          Dave Huntoon 04/21/2021

```
 1                    Dawn Avery to Ms. Davis - marked for

 2                    identification.)

 3   Q.   (BY MR. FRUCHTER)  Special Agent Huntoon, I've just

 4        handed you a letter that I think you mentioned.  It's

 5        now been marked Exhibit 3.  For the record, it is a

 6        letter from Dawn Avery of the Veterans Administration

 7        VA Medical Center located in Walla Walla, Washington,

 8        to "Alyssa Davis" with an address of 3782 Old Milton

 9        Highway, Walla Walla, Washington  99362.  Do you see

10        that?

11   A.   Yes.

12   Q.   And do you recognize Exhibit 3?

13   A.   I do.

14   Q.   And what is it?

15   A.   It's a letter from Dawn Avery, VA employee, addressed

16        to Ms. Alyssa Davis, addressing the basic allegation

17        that Mr. Avila had been overcharged by

18        Ms. Alyssa Davis.

19   Q.   And Mr. Avila was Ms. Davis' former tenant, is that

20        right?

21   A.   Yes.

22             I'm going to have to check my notes on her

23        name here of "Alyssa Davis" as opposed to

24        "Elyssa Young."

25   Q.   You know her as Elyssa Young?
```



Central Court Reporting   800.442.3376

```
 1   A.   Yes.

 2   Q.   You've seen documents that she signed as

 3        "Elyssa Young."

 4   A.   Yes.

 5   Q.   And did you have the opportunity to meet Ms. Young?

 6   A.   Yes.

 7   Q.   And was that at this location, 3782 Old Milton

 8        Highway --

 9   A.   Correct --

10   Q.   -- Walla Walla?

11   A.   -- where I provided her these two Civil Investigative

12        Demand documents.

13   Q.   And how do you know that the person with whom you

14        spoke was Elyssa Young?

15   A.   I had previously seen a Seattle Times article

16        referencing her and her husband, and I can't recall if

17        I pulled her Washington State driver's license.

18        Additionally, when I contacted her, she confirmed she

19        was Elyssa Young when I spoke with her.  And when I

20        spoke with her father upon initially arriving seeking

21        Elyssa, her father also confirmed she lived there.

22   Q.   All right.  And as part of that discussion that you

23        had with her, did she -- did Ms. Young also confirm

24        that she indeed had been a landlord in the HUD/VASH

25        program with Mr. Avila as a tenant?
```



```
 1   A.   Yes, we discussed that relationship.

 2   Q.   And so did you have the opportunity to personally

 3        serve Ms. Young with Exhibits 1 and 2 at that time?

 4   A.   Yes.  At the end of our discussion, I provided her

 5        both copies of these.  I advised her that she had

 6        7 days to respond to the US Attorney's office in

 7        Spokane, that the AUSA was involved, that their phone

 8        numbers were included in the Civil Investigative

 9        Demand and that she should call them if she had any

10        questions, and she indicated she understood.

11   Q.   All right.  And did you specifically discuss this

12        date, April 21st, 2021 as the date upon which

13        Ms. Young was compelled to appear?

14   A.   I don't recall saying April 21st specifically.  I told

15        her she had 7 days from the moment I was providing her

16        the documents.

17   Q.   All right.  And 7 days from --

18   A.   From --

19   Q.   -- from April 14th is today, is that correct?

20   A.   Yes, sir.

21   Q.   All right.  And did you also serve the Civil

22        Investigative Demand for Sunrhys, Exhibit 2 --

23   A.   Yes.

24   Q.   -- on Ms. Young at that time?

25   A.   At the same time, she confirmed she was an agent,
```



```
 1           registered agent of Sunrhys, LLC.
 2    Q.    And did you similarly advise her as to Sunrhys, LLC's
 3           obligations to appear on April 21st at the US
 4           Attorney's Office in Spokane?
 5    A.    I provided the same guidance for both CID's,
 6           indicating that she would have to respond to provide
 7           documents and testimony.
 8    Q.    And Exhibits 1 and 2 set forth contact information for
 9           the person or persons to be contacted if Ms. Young had
10           any questions or wanted to change the date; is that
11           right?
12    A.    Yes.
13    Q.    And did you go over that information with Ms. Young as
14           well?
15    A.    I advised her that the AUSA's phone numbers were
16           included in the CID's and she should call them if she
17           had any questions.
18    Q.    Did you provide Ms. Young with your contact
19           information?
20    A.    Yes, I must have because immediately following service
21           of these CID's, she called me to coordinate me to go
22           speak with another individual, and she left me a
23           voicemail.
24    Q.    And approximately what time of day were you able to
25           serve Ms. Young with Exhibits 1 and two?
```



```
 1   A.   It was mid-day, around lunch time.

 2   Q.   And have you been --  You mentioned that she contacted

 3        you shortly after that, is that right?

 4   A.   Correct.

 5   Q.   And was that to provide some follow-up information

 6        pertaining to the substantive discussion that you had

 7        with Ms. Young?

 8   A.   Correct.

 9   Q.   Did -- did you record the discussion that you had with

10        Ms. Young, by the way?

11   A.   Yes.

12   Q.   And so have you maintained that recording as part of

13        your investigative file?

14   A.   Yes.

15   Q.   And when Ms. Young contacted you shortly after you had

16        the opportunity to serve Exhibits 1 and 2, did she

17        raise any concerns at that time about the date, time,

18        or location of the testimony that was to take place

19        today?

20   A.   No.  The content of that communication was merely

21        directing me to speak with another individual.

22   Q.   And has Ms. Young contacted you since that time?

23   A.   No.

24   Q.   And to your knowledge, has Ms. Young contacted anyone

25        in the US Attorney's Office about the date for her
```



Civil Investigative Demand EDWA 21-004 & 21-005

Confidential
Dave Huntoon 04/21/2021

```
 1        compelled testimony?

 2   A.   To my knowledge, no.

 3   Q.   Nothing further, Special Agent Huntoon.  Thank you

 4        very much.

 5   A.   Thank you.

 6                  (Discussion off the record.)

 7                  MR. FRUCHTER:  We can waive reading and

 8        signing, yeah, and we'll order the transcript.

 9                  (Deposition concluded at 9:35 A.M.)

10                  (Signature waived.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Confidential
Dave Huntoon 04/21/2021

```
 1                    REPORTER'S CERTIFICATE

 2   STATE OF WASHINGTON
                      ss.
 3   COUNTY OF SPOKANE

 4

 5           I, Danelle Bungen, Certified Shorthand Reporter,

 6   Spokane County, State of Washington, License No. 2760, do

 7   certify that I reported the taking of the deposition of the

 8   witness, SPECIAL AGENT DAVE HUNTOON, commencing on

 9   April 21, 2021 at the hour of 9:24 A.M.; that prior to

10   being examined, the witness was by me duly sworn to testify

11   to the truth and nothing but the truth.

12           I further certify that the foregoing transcript

13   is a true and correct transcription of my original

14   stenographic notes; that the reading and signing of the

15   deposition by the witness was expressly waived.

16           I further certify that I am not a relative or

17   employee of any attorney or counsel of any of the parties,

18   nor a relative or employee of any attorney or counsel

19   involved in this action, nor a person financially

20   interested in the action.

21           IN WITNESS WHEREOF, I have hereunto set my hand

22   this 21st day of April 2021.

23

24                        Danelle Bungen, CSR

25
```



**-**

**-SH** 6:14

**1**

**1** 7:8,13 8:1,7 11:3 12:8,25 13:16
**14th** 8:8 11:19

**2**

**2** 7:10,14 8:1,7 11:3,22 12:8 13:16
**2021** 8:8 11:12
**21-004** 7:11
**21-005** 7:9
**21st** 11:12,14 12:3

**3**

**3** 8:20,25 9:5,12
**3782** 9:8 10:7

**5**

**5/20/2020** 8:25

**7**

**7** 11:6,15,17

**9**

**99362** 9:9
**9:35** 14:9

**A**

**A.M.** 14:9
**acronym** 6:14
**Act** 5:25 8:2
**acting** 7:22
**actions** 5:25

**Additionally** 10:18
**address** 8:10,15 9:8
**addressed** 7:18,19 9:15
**addressing** 9:16
**adjudication** 5:23
**Administration** 9:6
**administrative** 5:22
**advise** 12:2
**advised** 11:5 12:15
**affect** 8:6
**agent** 5:1,12,14,17,18 7:7,12 8:8
 9:3 11:25 12:1 14:3
**allegation** 6:16,24 7:18 9:16
**alleged** 6:21
**Alyssa** 9:8,16,18,23
**approximately** 12:24
**April** 8:8 11:12,14,19 12:3
**arriving** 10:20
**article** 10:15
**Attorney** 7:23
**Attorney's** 5:2 11:6 12:4 13:25
**AUSA** 11:7
**AUSA's** 12:15
**Avery** 9:1,6,15
**Avila** 9:17,19 10:25

**B**

**basic** 9:16
**basis** 6:24
**briefly** 5:17 6:10 7:14
**broken** 6:16,21

**C**

**call** 11:9 12:16
**called** 5:2 12:21
**capacity** 6:15

**Center** 9:7
**change** 12:10
**charge** 6:23
**check** 5:16 9:22
**CID's** 12:5,16,21
**civil** 5:22 7:8,10,17,21 10:11
 11:8,21
**Claims** 5:25 8:2
**communication** 13:20
**company** 7:1
**compelled** 11:13 14:1
**concerns** 13:17
**concluded** 14:9
**confirm** 10:23
**confirmed** 10:18,21 11:25
**contact** 12:8,18
**contacted** 8:15 10:18 12:9 13:2,
 15,22,24
**content** 13:20
**coordinate** 12:21
**copies** 11:5
**correct** 10:9 11:19 13:4,8
**criminal** 5:20,22

**D**

**D-A-R-R-E-L-L** 8:9
**Darrell** 8:9
**date** 11:12 12:10 13:17,25
**dated** 8:25
**DAVE** 5:1
**David** 5:10
**Davis** 9:1,8,16,18,23
**Davis'** 9:19
**Dawn** 9:1,6,15
**day** 12:24
**days** 11:6,15,17
**Demand** 7:8,10 10:12 11:9,22



**Demands** 7:17,22

**deposition** 14:9

**describe** 5:18 6:10

**Development** 6:14

**directing** 13:21

**discuss** 11:11

**discussed** 11:1

**discussion** 10:22 11:4 13:6,9 14:6

**District** 7:23

**documents** 10:2,12 11:16 12:7

**driver's** 10:17

**duly** 5:3

### E

**Eastern** 7:23

**EDWA** 7:9,11

**Elyssa** 6:8 7:20 9:24,25 10:3,14, 19,21

**employed** 5:11

**employee** 9:15

**end** 5:22 11:4

**entity** 7:3,6

**EXAMINATION** 5:6

**examined** 5:3

**exhibit** 7:8,10 8:20,25 9:5,12 11:22

**exhibits** 7:13,15 8:1,7 11:3 12:8, 25 13:16

### F

**False** 5:25 8:2

**familiar** 6:7

**familiarize** 7:14

**father** 10:20,21

**file** 13:13

**follow-up** 13:5

**forget** 6:14

**FRUCHTER** 5:7 7:12 8:23 9:3 14:7

### G

**General** 5:13,15,19

**Good** 5:8

**governors** 7:5

**guidance** 12:5

### H

**handed** 9:4

**Highway** 9:9 10:8

**Housing** 6:13,18

**HUD/VASH** 6:15 7:4 8:4 10:24

**Huntoon** 5:1,10,11,17 7:12 9:3 14:3

**husband** 10:16

### I

**identification** 7:9,11 9:2

**immediately** 12:20

**include** 5:24 6:3,21

**included** 11:8 12:16

**indicating** 8:11,16,17 12:6

**individual** 12:22 13:21

**information** 6:12 12:8,13,19 13:5

**initially** 10:20

**Inspector** 5:12,15,19

**investigating** 5:24

**investigation** 6:7,11 8:1

**investigations** 6:5

**investigative** 7:8,10,17,22 10:11 11:8,22 13:13

**investigator** 5:20

**involved** 6:13,25 7:3 11:7

**involving** 6:7

**issued** 7:22

### J

**job** 5:18,24 6:3

### K

**knowledge** 13:24 14:2

### L

**landlord** 6:13,15,25 10:24

**law** 6:23

**left** 12:22

**letter** 8:25 9:4,6,15

**letterhead** 8:16,17,18

**license** 10:17

**lived** 10:21

**LLC** 7:2,19 12:1

**LLC's** 12:2

**located** 9:7

**location** 10:7 13:18

**long** 5:14

**lunch** 13:1

### M

**maintained** 13:12

**mark** 8:19

**marked** 7:9,11,13 9:1,5

**matters** 5:21

**Medical** 9:7

**meet** 10:5

**mentioned** 9:4 13:2

**mid-day** 13:1

**Milton** 9:8 10:7

**moment** 8:23 11:15

**morning** 5:8



**N**

nature  6:10

notes  9:22

numbers  11:8 12:15

**O**

obligations  12:3

office  5:2,12,15,19 6:12 11:6
12:4 13:25

operations  5:21

opportunity  8:6 10:5 11:2 13:16

opposed  9:23

order  14:8

overcharged  9:17

overcharging  6:21

owned  7:3

owners  7:5

ownership  7:1

**P**

part  6:3 10:22 13:12

participation  8:3

permitted  6:22

person  10:13 12:9

personally  11:2

persons  12:9

pertaining  13:6

phone  11:7 12:15

place  13:18

previously  10:15

problem  8:22

program  6:15,17 8:4 10:25

programs  5:21 6:1

property  7:3

provide  12:6,18 13:5

provided  10:11 11:4 12:5

providing  11:15

pulled  10:17

pursuant  6:4

**Q**

questions  11:10 12:10,17

**R**

raise  13:17

reading  14:7

recall  10:16 11:14

received  6:12

recognize  7:16,17 9:12

record  5:9 9:5 13:9 14:6

recording  13:12

reference  8:20

referencing  10:16

regard  6:20

registered  12:1

relate  5:25 8:1

related  5:21 6:16 7:18

relationship  7:4 11:1

rent  6:23

respond  11:6 12:6

responded  8:9,12

responsibilities  5:18,24 6:3

rules  6:16,20

**S**

S-U-N-R-H-Y-S  7:2

Seattle  10:15

seeking  10:20

serve  11:3,21 12:25 13:16

service  8:6 12:20

serving  6:4

set  12:8

shortly  13:3,15

show  7:13

signature  14:10

signed  10:2

signing  14:8

similarly  12:2

sir  5:8 11:20

speak  12:22 13:21

special  5:1,12,14,17,18 7:12 8:8
9:3 14:3

specifically  7:19 11:11,14

Spokane  11:7 12:4

spoke  10:14,19,20

state  5:8 10:17

States  7:23

subpoenas  6:4

Subsidized  6:18

substantive  13:6

Sunrhys  7:2,6,18 11:22 12:1,2

Sunrhys'  8:3

sworn  5:3

**T**

tenant  6:23 9:19 10:25

tenants  6:22

testified  5:4

testimony  12:7 13:18 14:1

time  7:14 11:3,24,25 12:24 13:1,
17,22

Times  10:15

today  11:19 13:19

told  11:14

transcript  14:8

**U**

understanding  7:21



**understood** 11:10

**United** 7:22

**Urban** 6:13

---

**V**

---

**VA** 5:12,21,25 6:18,22 9:7,15

**VA's** 5:15,19

**VA-** 6:14

**VASHA** 6:18

**Veterans** 9:6

**voicemail** 12:23

---

**W**

---

**waive** 14:7

**waived** 14:10

**Walla** 8:14 9:7,9 10:10

**wanted** 12:10

**Washington** 7:24 9:7,9 10:17

---

**Y**

---

**years** 5:16

**Young** 6:8,12,20 7:5,20 8:7 9:24,
25 10:3,5,14,19,23 11:3,13,24
12:9,13,18,25 13:7,10,15,22,24

**Young's** 8:3

---

**Z**

---

**Z-O-R-N** 8:9

**Zorn** 8:9



# **EXHIBIT 4**



# INVOICE

| Job No. | Invoice Date | Invoice No. |
|---------|--------------|-------------|
| 55313 | 4/23/2021 | 35088 |

| **Case Name** |
|---------------|
| Civil Investigative Demand |

| **Payment Terms** |
|-------------------|
| Due Upon Receipt |

TO: Mr. Tyler Tornabene
U.S. Department of Justice
940 West Riverside Avenue, Suite 340
P.O. Box 1494
Spokane, WA 99201

| Date | Qty | | Description | Amount |
|------|-----|---|-------------|--------|
| 4/21/2021 | 2 | hrs (min) | Reporting the deposition of Dave Huntoon | 150.00 |
| | 15 | pgs | Original and one copy of the deposition of Dave Huntoon | 60.00 |
| | 51 | pgs | One copy of the exhibits to the above deposition (scanned and e-mailed) | 17.85 |
| | | | Shipping | 12.50 |
| DPB | | Invoice due upon receipt. Amounts 30 days past due will accrue interest of 1.5% per month, minimum of $10. Client is responsible for all collection costs, court, attorney, and legal fees on unpaid amounts. | **Total** $240.35 |

Thank you for your business!

We admit it!
We obsess!

Remit To: **Central Court Reporting**
**421 W. Riverside Ave., Suite 1010**
**Spokane, WA  99201**
**(509) 6245296**

Federal Tax No.:  91-1709691

## PAYMENT WITH CREDIT CARD

 

Cardholder's Name:
Card No.:
Exp. Date:              Phone No.:
Billing Address:
Zip:              Card Security Code:
Cardholder's Signature: